HOWE, BROWN & CO. *et al. v.* SANFORD FORK & TOOL CO. *et al.*

(*Circuit Court, D. Indiana.* December 9, 1890.)

CORPORATIONS—INSOLVENCY—PREFERENCES TO DIRECTORS.

> Where a corporation, while still a going concern, is insolvent, a mortgage on its property, executed to secure the directors, who are liable as indorsers for it to a large amount, is invalid as to general creditors, and that though the mortgage was procured by the directors without any actual fraudulent intent.

In Equity. On demurrer to the bill.
*McNutt & McNutt,* for complainants.
*McDonald, Butler & Snow* and *George A. Knight,* for defendants.

WOODS, J. The bill shows that the respondents McKean, Nixon, Minshall, Kidder, and Mayer are stockholders, and all except Mayer di-

rectors, of the Sanford Fork & Tool Company, incorporated, and that, being liable as indorsers of the paper of that company, overdue and about to become due, to the aggregate amount of $69,000, Mayer being liable jointly with the others, or some of them, upon a part of that paper, the said directors, on the 17th of March, 1890, after first procuring the consent and authority of the stockholders that it should be done, caused the officers of the company to execute a mortgage upon the corporate "buildings, machinery, and plant," to indemnify them and Mayer from loss on account of that liability; that the company was at the time deeply insolvent, its debts exceeding its assets by as much as $150,000, and that on the 13th of May it was put into the hands of a receiver by the circuit court of Vigo county. The complainants are shown to be general creditors of the company, with claims which, as allowed by the Vigo circuit court, amount to $11,631.39; and they dispute the validity of the mortgage for the indemnity of the respondents on the ground that the directors of the company had no right to obtain a preference for themselves over other creditors. It is not alleged, nor was it claimed in argument, that the respondents, or any of them, did anything with an actual intent to defraud. The question whether or not an insolvent corporation which had not suspended business could prefer its directors or managing agents, who were its creditors, or liable as indorsers of its paper, was considered upon full argument and citation of authorities *pro* and *con* in the case of *Lippincott* v. *Carriage Co.*, 25 Fed. Rep. 577, 586, and the conclusion was reached that the weight of authority and reason was against the validity of such preferences. The theory upon which that conclusion was based is shown in the following extract from the opinion:

"For while it is generally conceded that a corporation, notwithstanding insolvency, continues possessed [while a going concern] of a general power of management of its affairs, and, like natural persons, may give preferences by way of payment or security to one creditor or class of creditors over others, yet in close analogy to the rule which forbids the giving of preferences by individual debtors, for the purpose of securing, or in such manner as to secure, advantage or benefit to themselves, and in manifest accord with the tendency of judicial opinion, as expressed upon consideration of kindred questions, it has been decided in a number of cases that preferences given by insolvent corporations, in such manner as to be of special benefit to the directors or managing agents, or any of them, will be set aside. Indeed, it has been often said by judges, including those of the federal supreme court, that the property of an insolvent corporation is a trust fund, and the directors trustees for the creditors; and, if this were strictly so, it is manifest that no preferences could be allowed between creditors standing in the same relation to the fund. These statements are, however, true in a qualified sense, and lead logically, if not necessarily, to the conclusion that in such cases, if they give preferences, they must do it unbiased by considerations of personal advantage or gain."

That ruling has the support of a number of later decisions, in some of which it is expressly approved: *White, etc., Manuf'g Co.* v. *Pettes Importing Co.*, 30 Fed. Rep. 864; *Adams* v. *Milling Co.*, 35 Fed. Rep. 433; *Beach* v. *Miller*, (Ill.) 22 N. E. Rep. 464; *Haywood* v. *Lumber Co.*, 64

Wis. 639, 26 N. W. Rep. 184; *Olney* v. *Land Co.*, 16 R. I. 361, 18 Atl. Rep. 181; *Rouse* v. *Bank*, (Ohio,) 22 N. E. Rep. 293. See, also, *Hope* v. *Salt Co.*, 25 W. Va. 789; *Gillet* v. *Moody*, 3 N. Y. 479. On the contrary, the supreme court of Iowa, in the recent case of *Garrett* v. *Plow Co.*, 70 Iowa, 697, 29 N. W. Rep. 395, has declared such preferences valid if fairly given, and in support of that view counsel for the respondents have referred to the following cases, not cited in *Lippincott* v. *Carriage Co.*, *supra:* *Stratton* v. *Allen*, 16 N. J. Eq. 229; *Wilkinson* v. *Bauerle*, 41 N. J. Eq. 635, 7 Atl. Rep. 514; *Railroad Co.* v. *Dewey*, 14 Mich. 477.

It is not to be overlooked that some of the later decisions which deny the validity of preferences in favor of directors proceed upon the theory that the directors of an insolvent corporation, even before a suspension of business, are trustees for the creditors, and, if that theory is essential to the conclusion, the question is perhaps already foreclosed in the federal courts; because, in *Purifier Co.* v. *McGroarty*, 136 U. S. 241, 10 Sup. Ct. Rep. 1017, the supreme court has said that the decision in *Rouse* v. *Bank*, *supra*, "proceeded in part upon a theory that the property of an insolvent corporation is a trust fund for its creditors in a wider and more general sense than could be maintained upon general principles of equity jurisprudence." But I do not think that theory indispensable. It seems to me enough to say that a sound public policy and a sense of common fairness forbid that the directors or managing agents of a business corporation, when disaster has befallen or threatens the enterprise, shall be permitted to convert their powers of management and their intimate, and it may be, exclusive, knowledge of the corporate affairs into means of self-protection to the harm of other creditors. They ought not to be competitors in a contest of which they must be the judges. The necessity for this limitation upon the right to give preferences among creditors when asserted by corporations may not have been perceived in earlier times, but the growing importance and variety of modern corporate enterprises and interests I think will compel its recognition and adoption. The fact in this case that the stockholders authorized the making of the mortgage seems to be immaterial. That action was, it is averred, procured by the directors proposed to be benefited, they, themselves, being stockholders; and, even if this were not averred, the case would not, I think, be essentially different. Whether or not such preferences are fairly given is an impracticable inquiry, because there can be in ordinary cases no means of discovering the truth; and consequently the presumption to the contrary should in every case be conclusive. Concede that it is a question of proof, and that a preference in favor of a director will be deemed valid if fairly given, and it may as well be declared to be a part of the law of corporations that in cases of insolvency debts to directors and liabilities in which they have a special interest must be first discharged. That will be the practical effect, and the examples will multiply of individual enterprises prosecuted under the guise of corporate organization, for the purpose, not only of escaping the ordinary risks of business done in the owner's name, which may be legitimate enough, but of enabling the promoters and managers, when failure

comes, to appropriate the remains of the wreck by declaring themselves favored creditors. Besides inconsistency with that equality which Equity loves, such favors involve too many possibilities of dishonesty and successful fraud to be tolerated in an enlightened system of jurisprudence.

The demurrer is overruled.