BREED v. GLASGOW INV. CO.

(Circuit Court, W. D. Virginia.    July 11, 1895.)

CORPORATIONS—MORTGAGES—VIRGINIA STATUTE.

The F. Co., on August 2, 1890, conveyed certain land in Virginia to the P. Co. for a consideration, part of which was paid in cash, and the remainder was to be paid in deferred installments, secured by a deed of trust, which was executed, but not recorded. June 1, 1891, the P. Co. conveyed the same land to the G. Co. by a deed referring to the deed from the F. Co., and reciting an intention to transfer the property subject to all the terms of that deed. The G. Co. also expressly assumed the payment of the unpaid purchase money due the F. Co. Simultaneously, the G. Co. issued its bonds for the amount of such purchase money, payable to the F. Co. or bearer, and secured them by a deed of trust of the land. This deed of trust was recorded on December 30, 1891. At the time of the conveyance to the G. Co., the F. Co. executed a release to the P. Co. of its mortgage, which release was recorded January 4, 1892. On June 27, 1892, the G. Co. was placed in the hands of a receiver appointed in a creditors' suit. A general creditor of the company intervened, claiming that the deed of trust made by the G. Co. to secure the bonds should be decreed

to inure to the benefit of all the creditors of the G. Co. *Held*, that the provisions of section 1149 of the Code of Virginia, relating to liens created by corporations to secure preferences to creditors, did not apply, since the deed of trust was given to secure a debt contracted at the time, within the exception of that statute, and no ground of equity required the court to deprive a vendor of property of the lien created for the purchase money, for the benefit of general creditors.

Letcher & Letcher, for complainant.

M. M. Martin, for defendant.

O. B. Roller & Martz and M. M. Martin, for petitioner.

John Selden, H. O. Claughton, Jas. Bumgardner, Jr., W. E. Craig, and Letcher & Letcher, for demurrant.

PAUL, District Judge. The petitioner, A. F. Smith, files his petition in this cause, alleging that he is a creditor of the defendant company in the sum of $3,000, for money loaned it on the 26th day of May, 1891, with interest thereon from said date; that, under the provisions of section 1149 of the Code of Virginia (Ed. 1887), a certain deed of trust, made on the 1st day of June, 1891, from the Glasgow Investment Company (hereinafter designated as the Glasgow Company) to S. H. Letcher, trustee, to secure the payment of 90 bonds, of $1,000 each, payable to the Natural Bridge Forest Company (hereinafter designated as the Forest Company), or bearer, with the coupons thereon, should be held to inure for the benefit, ratably, of all the creditors of said company existing at the time said deed of trust was made. The petition further alleges that at the time of the conveyance of the property involved in this suit, conveyed by the Natural Bridge Park Association (hereinafter designated as the Park Association) to the Glasgow Company, the latter company was insolvent, and that such insolvency was known to H. C. Parsons, the president of the Forest Company, the vendor of the said property to the Park Association; that the deed of conveyance from the Forest Company to the Park Association, dated August 2, 1890, did not retain on the face of the conveyance a lien to secure the unpaid purchase money, as by law required, but only provided that a deed of trust should be executed by the Park Association conveying the same property conveyed to it in trust to secure the payment of said unpaid purchase money, and that such deed of trust was never recorded; that in October, 1891, the Forest Company delivered to the Park Association a deed of release which had been executed in August previous, by which said Forest Company acknowledged the satisfaction of all the unpaid purchase money due it at that time from the Park Association, and that this was done in order to enable the Glasgow Company to demand and receive from the insurance companies payment of the insurance policies on the hotel property, which had then just been destroyed by fire, and that for the same purpose the deed of trust dated June 1, 1891, from the Glasgow Company to S. H. Letcher, trustee, to secure the payment of the 90 bonds for $1,000 each, with the coupons on the same, was held back, and not delivered to said Letcher, trustee; and that this was done by agreement with the For-

est Company. To this petition, Henry Strong, the holder of a portion of the bonds secured by said deed of trust from the defendant company to S. H. Letcher, trustee, the said S. H. Letcher, trustee, and the Forest Company file a demurrer on the following grounds:

"(1) That the said petition commences, in effect, a new suit, over which the jurisdiction of this court is not shown, by such petition, to extend; (2) that the said petition seeks to raise issues foreign to those involved in the cause wherein such petition hath been filed, as well as to add new parties to said cause; (3) that the said petition is vague, uncertain, and insensible; (4) that the petitioner in said petition hath been guilty of great and unexplained laches and delay in questioning the operation, according to its terms, of the said deed of trust to S. H. Letcher, trustee, recorded on the 30th day of December, 1891; (5) that it is not pretended, in and by the said petition, that the certain bonds therein mentioned were nonnegotiable instruments, nor that the holders thereof are not bona fide holders for valuable consideration, in the usual course of business without notice; (6) that the said petition imputes to the demurrant no notice of any of the matters or things in pais in said petition alleged against the operation, according to its terms, of the aforementioned deed of trust; (7) that the said petition contains no averments sufficient, in point of law, to indicate that the aforesaid deed of trust was an incumbrance created by the Glasgow Investment Company upon the property of the said company for the purpose of giving a preference to the Natural Bridge Forest Company over any creditor of the former company; and (8) that the said petition doth not contain any matter of equity whereon this court can ground any decree or give any relief against this demurrant."

The petition and demurrer put in issue the whole record in the cause, and the following facts are presented for the consideration of the court:

On August 2, 1890, the Forest Company conveyed to the Park Association the land involved in this suit, for $160,000, of which $10,000 was to be paid in cash, and the balance to be paid in certain deferred payments, with interest at 5 per cent. per annum, the deferred payments to be secured by a deed of trust of even date. This deed of trust was executed, but not recorded. On June 1, 1891, the Park Association conveyed the same land to the Glasgow Company. In this deed of conveyance special reference is made to the deed from the Forest Company to the Park Association, dated August 2, 1890. It recites:

"The object of this conveyance being to transfer to the said party of the second part all of the property, privileges, easements, and rights of every description conveyed to the party of the first part in the above-mentioned deed of conveyance; the same to be received and held by the said party of the second part upon the terms, stipulations, and conditions therein set forth."

And this deed of conveyance further stipulates that:

"By the acceptance of this deed of conveyance, it is to be understood that the party of the second part assumes and guaranties payment to the Natural Bridge Forest Company of all unpaid purchase money due, or to become due, under the above-described deed of conveyance from the said Natural Bridge Forest Company to the Natural Bridge Park Association."

On even date with the last-mentioned deed between the Park Association and the Glasgow Company, the latter company executed a deed of trust to S. H. Letcher, trustee, in which the Forest Company was made party of the third part, and which conveys the same property to said S. H. Letcher, trustee, in trust for purposes therein named.

This deed of trust, after certain recitals therein not necessary to be here quoted, provides as follows:

"This deed and conveyance is made in trust to secure the payment of ninety bonds, for the sum of one thousand dollars each, numbered from No. 1 to No. 90, inclusive, bearing even date herewith, and to secure the payment of the warrants or coupons for interest upon said bonds, payable semiannually, as the same shall mature."

This deed of trust was recorded in the clerk's office of the county court of Rockbridge county, Va., on December 30, 1891.

On June 1, 1891,, the Forest Company and S. H. Letcher, trustee, executed to the Park Association a deed of release, releasing the deed of trust executed by the Park Association to S. H. Letcher, trustee, dated August 2, 1890, which had not been recorded. This deed of release was recorded in the clerk's office of the county court of Rockbridge county, Va., on January 4, 1892.

On June 27, 1892, upon a general creditors' bill filed by F. W. Breed, the plaintiff in this cause, the court appointed J. O. Burdette receiver of the Glasgow Company, and by an order entered on November 10, 1892, appointed S. H. Letcher co-receiver of said company; and on December 15, 1892, G. D. Letcher was appointed a special commissioner to lease the property of said company.

The provision of the statute in the Code of Virginia (Ed. 1887) on which the petitioner relies is as follows:

"Sec. 1149. * * * [Applying to chartered companies]; and if any such company create any lien or encumbrance on its works or property for the purpose of giving a preference to one or more creditors of the company over any other creditor, or creditors, except to secure a debt contracted, or money borrowed, at the time of the creation of the lien or encumbrance, the same shall enure to the benefit ratably of all the creditors of the company existing at the time such lien or encumbrance was created."

The form, tenor, and effect of the bonds issued by the Glasgow Company, for the security of the payment of which, and of the coupons thereto attached, the deed of trust from the Glasgow Company to S. H. Letcher, trustee, dated June 1, 1891, and recorded on December 30, 1891, were as follows:

"No. ——.                                                        No. ——.
"The Glasgow Investment Company.
"Incorporated Under the Laws of the State of Virginia.

"Know all men by these presents, that the Glasgow Investment Company acknowledges itself indebted to the Natural Bridge Forest Company, or bearer, in the sum of one thousand dollars, for value received, to be paid on the first day of June, 1906, with interest thereon to be computed from the first day of June, 1891, at the rate of six per cent. per annum, payable semiannually, in the city of New York, at the office of the Manhattan Trust Company, on the first days of June and December in each year, until the said principal shall be fully paid, on the presentation and surrender of attached coupons as they respectively become due. This bond is one of a series of ninety bonds for one thousand dollars each, numbered consecutively from No. 1 to No. 90, inclusive; all bearing same date herewith, and secured by a deed of trust on the property of said company, executed for the benefit of the holders of the said bonds to S. H. Letcher, trustee; said deed of trust bearing date the first day of June, 1891. This bond is redeemable, at the option of the Glasgow Investment Company, at or after five years from the date hereof, to be called for redemption in the inverse order of the numbers thereof; and is otherwise

subject to the provisions, conditions, and covenants made and set forth in the deed of trust securing the same, as fully as if such provisions, conditions, and covenants were herein fully recited. This bond shall not become obligatory until authenticated by the certificate of the said trustee. In testimony whereof, the said company has caused its corporate seal to be hereunto affixed, and these presents to be executed by its president, and attested by its secretary, the ———— day of ————, 1891.

"————, Secretary. ————, President.

"Trustee's Certificate.

"I hereby certify that the foregoing bond is one of a series of ———— bonds referred to and described in the deed of trust bearing date the first day of June, 1891, executed and delivered by the Glasgow Investment Company to me as trustee. ————, Trustee."

The coupons, 30 in number, of each of said bonds, were in form, tenor, and effect as follows:

"The Glasgow Investment Company

"Will pay to the bearer, at the office of the Manhattan Trust Company, in the city of New York, thirty dollars, on the first day of December, ————.
"————, Secretary."

The object of the Virginia statute on which this proceeding is based is to prevent a private corporation from giving a preference to one or more creditors by incumbering its property in their favor, where all of the creditors stand upon the same footing,—where all are equally entitled to share in the assets of the corporation for the payment of their debts. The legislature of Virginia has embodied in the statute a principle familiar to courts of chancery in dealing with the affairs of insolvent private corporations. It rests upon the maxim, "Equality is equity." It was this rule that controlled the court in Manufacturing Co. v. Hutchison, 11 C. C. A. 320, 63 Fed. 496, which counsel for the petitioner here has urged upon the attention of the court as controlling authority in this case. That was a case where an insolvent corporation gave a mortgage upon the whole of its property and assets to secure some of its creditors to the exclusion of all others. The same doctrine is held in Lippincott v. Carriage Co., 25 Fed. 577, and in Howe v. Tool Co., 44 Fed. 231. In Curran v. State, 15 How. 306, it is said that the assets of an insolvent banking corporation "are a fund for the payment of its debts. If they are held by the corporation itself, and so invested as to be subject to legal process, they may be levied on by such process. If they have been distributed among stockholders, or gone into the hands of other than bona fide creditors or purchasers, leaving debts of the corporation unpaid, such holders take the property charged with the trust in favor of creditors, which a court of equity will enforce, and compel the application of the property to the satisfaction of their debts. This has often been decided, and rests upon plain principles." But even this doctrine has its exceptions, as was recognized in the case cited (Manufacturing Co. v. Hutchison, supra), in which it is said that "all creditors are equal in right, unless preference or priority has been legally given by statute, or by the act of the corporation, to particular creditors"; and, further on, "undoubtedly a solvent corporation, if not forbidden by its charter, may mort-

gage its property to secure the preference of obligations assumed before or at the time of the execution of the mortgage." See, also, Hauselt v. Harrison, 105 U. S. 405, and Canal Co. v. Vallette, 21 How. 414.

The record in this case does not show that the Glasgow Company was insolvent at the time it executed the deed of trust of June 1, 1891. The bill alleging its insolvency was not filed until a year afterwards. But grant that it was an insolvent corporation when said deed of trust was given; the doctrine, as applied by the courts to insolvent corporations, has never been carried so far as to allow a court of equity to invade a security taken by a vendor to secure the purchase money for the property sold, and to subject this property, or its proceeds, to a ratable distribution among all the creditors of an insolvent corporation. The court is at a loss to see why it should do so. Selling the property to the corporation, and reserving a lien on the property to secure the purchase money, is not an act that in itself works detriment to the general creditors of the corporation. It is because of the injury done to the other creditors that a corporation is forbidden to prefer one general creditor to another. It is very plain that this reason does not apply in case of a vendor selling property, and the corporation creating a lien on such property to secure the payment of the purchase money. The preservation of liens for the payment of the purchase money of property has always received the careful consideration of courts of equity. The Virginia statute, itself, on which the petitioner relies, does not undertake to extend its inhibition to specific liens arising out of transactions touching designated property. It makes special exceptions in favor of liens or incumbrances created to secure a debt contracted or money borrowed at the time of the creation of the lien or incumbrance; the language of the statute being, "except to secure a debt contracted, or money borrowed, at the time of the creation of the lien or mortgage." The questions raised in this case, under this statute, have not been passed upon by the supreme court of appeals of Virginia, and the statute has received no such consideration in the decisions of that court that entitle it to controlling effect in this court. In such case it is the duty of this court to follow the decisions of the supreme court of the United States. As said in Burgess v. Seligman, 107 U. S. 20, 2 Sup. Ct. 10:

"The federal courts have an independent jurisdiction in the administration of state laws, co-ordinate with, and not subordinate to, that of the state courts, and are bound to exercise their own judgment as to the meaning and effect of those laws. The existence of two co-ordinate jurisdictions in the same territory is peculiar, and the results would be anomalous and inconvenient, but for the exercise of mutual respect and deference. Since the ordinary administration of the law is carried on by the state courts, it necessarily happens that, by the course of their decisions, certain rules are established, which become rules of property and action in the state, and have all the effect of law, and which it would be wrong to disturb. This is especially true with regard to the law of real estate, and the construction of state constitutions and statutes. Such established rules are always regarded by the federal courts, no less than by the state courts themselves, as authoritative declarations of what the law is. But, where the law has not been thus settled, it

is the right and duty of the federal courts to exercise their own judgment, as they also always do in reference to the doctrines of commercial law and general jurisprudence."

See, also, Carroll Co. v. Smith, 111 U. S. 556, 4 Sup. Ct. 539, and Railroad Co. v. Baugh, 149 U. S. 368, 13 Sup. Ct. 914.

In the case before the court, the record shows that the deed of conveyance from the Forest Company to the Park Association, dated August 2, 1890, conveying the land in question with general warranty, provided for the payment of the purchase money, and the manner of securing the same, as follows:

"The consideration of one hundred and sixty thousand ($160,000) dollars hereinbefore mentioned is to be payable as follows: Ten thousand dollars ($10,000) in cash, the receipt whereof is hereby acknowledged; twenty thousand dollars ($20,000) to be paid on 21st day of August, 1890; fifteen thousand dollars ($15,000) on the 21st day of October, 1890; fifteen thousand dollars ($15,000) on the 21st day of January, 1891; ten thousand dollars ($10,000) on the 21st day of July, 1891; and fifteen thousand dollars ($15,000) annually thereafter until the entire purchase money is entirely paid off and discharged; all of said deferred payments to bear five per cent. interest from the 21st day of July, 1890, and the interest to be paid annually; which payments are to be evidenced by bonds or notes, with the privilege to the said party of the second part to pay any or all of said notes before maturity, the deferred payments to be secured by deed of trust of even date herewith."

In pursuance of the stipulation in this deed of conveyance that the deferred payments of the purchase money should be secured by deed of trust of even date therewith, the Park Association prepared said deed of trust, but it was not recorded. Counsel for the petitioner contend that, because of the failure to record this deed of trust, it was of no effect as fixing a lien upon the property. The court does not concur in this view. The stipulation in the deed of conveyance that a deed of trust should be executed to secure the unpaid purchase money fixed the lien upon the property, and this lien would have been effectual, and one that a court of equity would have enforced, if no deed of trust had been executed in pursuance of the stipulation. This is in accordance with the familiar maxim that equity regards that as done which ought to be done. Canal Co. v. Vallette, 21 How. 414, was a case in which the bonds issued by the canal company stated on their face that they should be the first and only loan created by the company under its charter for the completion of the canal; and the court held that:

"In the absence of objections to the validity of these bonds, there can be no question concerning their legal operation and effect, or of the jurisdiction of a court of equity to enforce them. That court treats an agreement for a mortgage or pledge of bonds or other property as binding, and will give it effect according to the intention of the contracting parties."

This is a stronger case than the one at bar. In the case we are considering, we have not only an agreement to execute a deed of trust, but the deed of trust was actually executed, and the only objection made to its validity is that it was not recorded according to the registry laws of Virginia.

It is contended by counsel for the petitioner that, under the provisions of section 2474 of the Code of Virginia (Ed. 1887), a lien for the purchase money of land can only be secured by an express res-

ervation in the deed of conveyance, and that the stipulation in the deed of conveyance from the Forest Company to the Park Association was not such a reservation; that the lien thus provided for could not be effectual unless the deed of trust was executed and duly recorded. The section relied on—section 2474 of the Code of Virginia (Ed. 1887)—simply abolishes the vendor's equitable lien for unpaid purchase money, but it does not affect the right of the parties to secure the payment of the purchase money by the execution of a deed of trust on the property conveyed. This mode of securing the purchase money on land is in no wise affected by the statute relied on. This old and familiar method of securing the vendor in his purchase money remains the same as before the passage of the statute.

By deed bearing date June 1, 1891, acknowledged June 9, 1891, and recorded January 4, 1892, the Park Association conveyed the same land, with general warranty of title, to the Glasgow Company, upon the provisions, stipulations, and conditions contained in the deed of conveyance from the Forest Company to the Park Association, the language used in the deed being that:

"The object of this conveyance being to transfer to the said party of the second part all of the property, privileges, easements, and rights of every description conveyed to the party of the first part in the above-mentioned deed of conveyance; the same to be received and held by the said party of the second part upon the terms, stipulations, and conditions therein set forth. By the acceptance of this deed of conveyance, it is to be understood that the party of the second part assumes and guaranties payment to the Natural Bridge Forest Company of all the unpaid purchase money due, or to become due, under the above-described deed of conveyance from the said Natural Bridge Forest Company to the Natural Bridge Park Association."

In pursuance of its undertaking, as set forth in the deed of conveyance from the Park Association to the Glasgow Company, the latter, by deed of trust dated June 1, 1891, acknowledged August 22, 1891, and recorded December 30, 1891, to secure $90,000 of its coupon bonds, conveyed the said land, with general warranty of title, to S. H. Letcher, trustee, and with express reference to the contemporaneous deed from the Park Association to the Glasgow Company for a more particular description of the trust property. On the same day the Forest Company executed its deed of release to the Park Association, which was acknowledged October 3, 1891, and recorded January 4, 1892, acknowledging that "it has received satisfaction" of the unpaid purchase money which was to be secured by deed of trust under the terms of the original deed of conveyance from the Forest Company to the Park Association. This satisfaction was, of course, the bonds issued by the Glasgow Company to the Forest Company, or bearer, and secured by the deed of trust to Letcher dated June 1, 1891. In view of the fact that, when the Glasgow Company purchased the property of the Park Association, the property was incumbered with a lien for the unpaid purchase money; that the Glasgow Company contracted expressly and agreed to pay this unpaid purchase money, and, in pursuance of its agreement, executed the deed of trust of June 1, 1891, and executed and delivered its bonds payable to the Forest Company, or bearer,—the

deed of trust clearly falls within the exceptions in the statute which provides that a corporation may execute a deed of trust to secure "a debt contracted, or money borrowed, at the time of the creation of the lien or incumbrance." The creation of the lien or incumbrance in this case was contemporaneous with the contraction of the debt for the purchase money, for the security of which said lien or incumbrance was made.

As to the allegation by the petitioner that the deed was withheld for recordation until the 30th day of December, 1891, for the purpose of enabling the Glasgow Company to collect and receive from the insurance companies the insurance money on the hotel on the property, which had then been recently burned, the court does not see that this has any bearing whatever upon the questions to be decided in this case. If the course alleged to have been pursued by the trustee had been so pursued, the effect, so far from being an injury to the general creditors, was intended, in its result, for their benefit, by increasing the assets of the Glasgow Company. It is not necessary to discuss this matter, as the record in this cause shows that the policies of insurance in question were decided to be valid by the supreme court of the state of New Hampshire, and the insurance money thereby secured has been collected, and is now on deposit to the credit of this cause.

Considerable argument has been had as to the character of the bonds issued by the Glasgow Company, payable to the Forest Company, or bearer,—as to whether they are negotiable, and therefore protected in the hands of an innocent holder for value. It is unnecessary to discuss this question. The court holds the deed of trust to be valid on the grounds stated, without regard to the commercial character of the bonds for the security of which it was executed. There is no allegation in the petition of fraud in any of the transactions connected with the deed of trust, or the issuance of the bonds. On the contrary, counsel for the petitioner insist that the deed of trust is valid, and should stand, but contend that it shall be opened to the admission of the general creditors of the Glasgow Company to participate in the assets to be realized under its foreclosure; that the deed of trust given for the express purpose of securing the payment of the purchase money on the property shall, in effect, be declared a nullity; that the creditor, who has parted with his property on the faith of a first lien to protect him against loss, shall surrender his security for the payment ratably of the claims of the general creditors of this corporation. This contention, for the reasons given, cannot be sustained. The demurrer must be sustained, and the petition dismissed.