### BREED v. GLASGOW INV. CO.

(Circuit Court, W. D. Virginia. February 17, 1899.)

1. TRUST DEEDS—CONSTRUCTION—RESERVATIONS.

A trust deed executed by a land company reserved "such lands as may be occupied by, and used in connection with, such hotel as may be built thereon." At that time the company contemplated the erection of an hotel in addition to others already built. One of the latter was after-

wards burned, and another was erected in its stead. The contemplated hotel was never built. *Held*, that the ground occupied by the hotel erected to replace the one burned was not within the reservation.

**2. SAME—COVENANT TO REBUILD IN CASE OF FIRE.**

A trust deed securing bonds required the grantor to keep the property fully insured for the benefit of the trust, and to preserve the buildings, with the right, however, of changing them, provided that the aggregate value of the improvements should not be diminished. *Held*, that the provision was not a covenant of the grantor to rebuild in case of fire.

**3. RECEIVERS—CONTRACTS OF DEBTOR—PERFORMANCE—MECHANICS' LIENS.**

Where a receiver is appointed with the usual injunction order pending performance of a contract of the debtor for the erection of a building on his land, the contractor cannot finish the uncompleted part, and obtain a mechanic's lien therefor, in the absence of order of court.

**4. SAME—NOTICE OF APPOINTMENT.**

All persons having contractual relations with a debtor are bound by an order appointing a receiver of his property, whether or not they have notice thereof.

**5. MECHANICS' LIENS—CLAIM—SUFFICIENCY OF ACCOUNT.**

Code Va. 1887, § 2476, provides that, to perfect a lien, a contractor must file "an account showing the amount and character of the work done or materials furnished, the prices charged therefor, the payments made, if any, and the balance due." *Held*, that an account for $12,000, for "labor performed and materials furnished" between certain dates, in the construction of a certain building, "as per contract," was insufficient to create a lien, where the erection of the building was contracted for as an entirety, and the contract price was $17,945.

A bill was filed by F. W. Breed against the Glasgow Investment Company to foreclose a mortgage. The court appointed J. O. Burdette and S. H. Letcher receivers of the company, and all creditors were called in. Thereafter A. F. Smith, by petition, set up a simple contract claim against the company, and sought payment out of the mortgaged property pari passu with the bonds secured by the deed. The court sustained a demurrer to the petition, and dismissed the same. 71 Fed. 903. On appeal, the order sustaining the demurrer was set aside, and the case was remanded for further proceedings. 20 C. C. A. 432, 74 Fed. 332. After the remand of the case, the master was directed to take testimony on the petition of A. F. Smith, and report thereon. The A. T. Withrow Lumber Company also filed a petition presenting a claim for a mechanic's lien against certain property of the corporation defendant. The master found against the claim of A. F. Smith, and in favor of that of the lumber company. The present hearing is on exceptions to the master's report.

M. M. Martin and O. B. Roller & Martz, for A. F. Smith.

Winfield Liggett, William Leigh, and H. C. Riley, for Withrow Lumber Co.

John Selden and G. D. Letcher, for bondholders.

PAUL, District Judge. This cause comes on to be heard on the report of the master in pursuance of a decree entered herein on the 28th of February, 1896, by which the cause was recommitted. The master had made a report, January 28, 1896, to which exceptions had been filed by Henry Strong, a holder of part of the first mortgage bonds of the Glasgow Investment Company, and by others. By a decree of the 13th of June, 1896, the master was directed "to take

testimony upon the matters alleged in the petition of A. F. Smith filed in this cause on the 1st day of March, 1895, and make report thereon, with all other matters which he had heretofore been directed to investigate and inquire into."

The questions arising on the petition of A. F. Smith were before this court at a special term thereof, July 11, 1895. They were presented by a demurrer filed by Henry Strong and others to the petition. On the hearing, this court sustained the demurrer, and dismissed the petition. 71 Fed. 903. From this action of the court, Smith appealed to the circuit court of appeals, Fourth circuit. This court held that the demurrer to the petition put the whole record in issue, and that, admitting all that the petition alleged, it could not be sustained. The court of appeals reversed the decree of this court, and remanded the case for testimony to be taken on the petition. 20 C. C. A. 432, 74 Fed. 332. The master, in pursuance of the reference, took testimony in support of, and in opposition to, the allegations in the petition of said A. F. Smith.

The contention of the petitioner Smith is that the deed of trust executed by the Glasgow Investment Company to S. H. Letcher, trustee, of date June 1, 1891, the purpose of which was to secure to the Natural Bridge Forest Company the payment of the amount due it from the Natural Bridge Park Association, was in violation of section 1149 of the Code of Virginia of 1887. This section provides:

"Sec. 1149 [applying to chartered companies]. And if any such company create any lien or incumbrance on its works or property for the purpose of giving a preference to one or more creditors of the company over any other creditor or creditors, except to secure a debt contracted, or money borrowed, at the time of the creation of the lien or incumbrance, the same shall inure to the benefit, ratably, of all the creditors of the company existing at the time such lien or incumbrance was created."

The master, after carefully reviewing and discussing the testimony before him, says:

"In view of the foregoing findings of fact, and the law applicable thereto, your commissioner is of opinion that the deed of trust from the Glasgow Investment Company to S. H. Letcher, trustee, dated June 1, 1891, is not in violation of the provisions of section 1149 of the Code of Virginia, and that the bonds secured under said deed of trust constitute a lien upon the estate conveyed in said deed of trust superior to the claim of the petitioner A. F. Smith."

The court sustains this finding of the master. It will not discuss the facts and the law upon which it rests. The reasons given by the court for sustaining the demurrer to the petition of A. F. Smith (71 Fed. 903) are applicable in sustaining the conclusion of the master. It is not necessary to repeat them.

The questions which have elicited the most elaborate and earnest argument are those raised by the exceptions taken to the master's report in allowing a mechanic's lien in favor of the Withrow Lumber Company, hereafter styled the "Withrow Company." This claim of a mechanic's lien by the Withrow Company arises as follows: On the 21st of October, 1891, the Forest Inn, situated on the mortgaged premises, was destroyed by fire. On the 15th day of May, 1892, the Glasgow Investment Company entered into a contract with the Withrow Company to erect an hotel building to replace the one

destroyed, and to repair another hotel, known as the "Appledore." The price agreed to be paid for the work was $17,945.42. The receiver in this cause was appointed June 27, 1892. The Withrow Company commenced work on the building the 15th day of May, 1892, and continued work until the 27th day of August, 1892. It then ceased work, and filed its claim for a mechanic's lien. Following is the statement: "To labor performed and materials furnished in the construction of a new hotel at Natural Bridge, Va., and labor performed and materials furnished in repairing and improving the building known as 'Appledore Hotel,' as per contract, $12,000."

Section 2475 of the Code of Virginia of 1887 provides:

"Sec. 2475. Lien for Work Done and Materials Furnished by Artizans, Mechanics, Lumber Dealers and Others. All artizans, builders, mechanics, lumber dealers, and other persons performing labor about, or furnishing materials for, the construction, repair, or improvement of any building or structure, permanently annexed to the freehold, whether they be general contractors or subcontractors, shall have a lien, if perfected as hereinafter provided, upon such building or structure, and so much land therewith as shall be necessary for the convenient use and enjoyment of the premises, for the work done and materials furnished. But where the claim is for repairs only, no lien shall attach to the property repaired unless the said repairs were ordered by the owner of the property or his agent."

Section 2476 is as follows:

"Sec. 2476. Perfection of Lien by General Contractor—Mechanic's Lien Record—Notice of Lien. A general contractor, in order to perfect the lien given him by the preceding section, shall at any time after the work done, or materials furnished by him, and before the expiration of thirty days from the time such building or structure is completed, or the work thereon otherwise terminated, file in the clerk's office of the county or corporation court of each county or corporation in which the building or structure, or any part thereof is, or in the clerk's office of the chancery court of the city of Richmond, if the said building or structure is within the corporate limits of the said city, an account showing the amount and character of the work done or materials furnished, the prices charged therefor, the payments made, if any, and the balance due, verified by the oath of the claimant or his agent, with a statement attached declaring his intention to claim the benefit of said lien, and giving a brief description of the property on which he claims the lien. It shall be the duty of the clerk, in whose office such account and statement shall be filed as hereinbefore provided, to record the same in a book to be kept by him for that purpose, called the 'Mechanic's Lien Record,' and to index the same in the name as well of the claimant of the lien as of the owner of the property, and from the time of such filing all persons shall be deemed to have notice thereof."

Section 2477 provides for perfection of lien by subcontractor. Section 2478 provides:

"Sec. 2478. What Inaccuracies not to Affect Lien. No inaccuracy in the account filed, or in the description of the property to be covered by the lien, shall invalidate the lien, if the property can be reasonably identified by the description given and the account conform substantially to the requirements of the two preceding sections, and is not willfully false."

The statute gives a lien upon the building or structure, and so much land therewith as shall be necessary for the convenient use and enjoyment of the premises.

It is not contended that the mechanic's lien claimed by the Withrow Company is a lien on the land embraced in the deed of trust

executed June 1, 1891, by the Glasgow Company to S. H. Letcher, trustee, to secure the holders of the bonds of the Glasgow Company. But it is insisted that there is a reservation clause in that deed which eliminates from its operation the hotel site and so much land as may be necessary for the convenient use and enjoyment of the premises. This contention is based on this reservation in the deed of trust:

"It is furthermore to be understood that there are to be reserved from the operation of this deed all the drives, streets, and alleys on said land now laid off, or that may hereafter be indicated, on any plot, for the improvement of said property, and such lands as may be occupied by, and used in connection with, such hotel as may be built thereon, together with all approaches thereto."

The evidence shows that, at the time the deed of trust was executed, the Glasgow Company contemplated the erection of a new hotel, to cost $50,000. This was several months before the Forest Inn was destroyed by fire, and to replace which the Withrow Company contracted to erect a new building. To understand the intention of the contracting parties, we must place ourselves in the position they occupied when the deed of trust was executed. It was in contemplation of the grantor, the Glasgow Company, to erect a new hotel on the premises conveyed, and it desired to have under its exclusive control such hotel, and the lands occupied and used in connection therewith, and the approaches thereto. The parties were dealing with the property as it existed at the time of the contract, when the Forest Inn was one of the standing hotels. Men in the ordinary business affairs of everyday life do not contract with reference to unforeseen, unexpected, and unthought of occurrences, which we term "accidents."

In James v. Insurance Co., 4 Cliff. 278, Fed. Cas. No. 7,182, 8 Myers, Fed. Dec. § 828, the court says:

"Parties may make their own contracts, but the courts, in all cases except where the language employed is so explicit and unambiguous that it must be understood that the words express their own interpretation, may give the language a reasonable construction, to effect the intention of the parties as collected from the whole instrument, the subject-matter, and the surrounding circumstances. The province of construction is limited to the language employed, as applied to the subject-matter and the surrounding circumstances contemporaneous with the instrument; but courts are not denied the same light and information the parties enjoyed when the contract was executed, and for that purpose may acquaint themselves with the persons and circumstances that are the subject of the written instrument, and are entitled to place themselves in the same situation as the parties who made the contract, so as to view the circumstances as they viewed them, and so to judge the meaning of the words and of the correct application of the language to the things described."

"It is a principle recognized and acted upon as a cardinal rule by all courts of justice, in the construction of contracts, that the intention of the parties is to be inquired into, and, if not forbidden by law, is to be effectuated." Bradley v. Steam-Packet Co., 13 Pet. 89.

The clause referred to in the deed of trust reserved from its operation a portion of the land conveyed on condition that a new hotel should be built thereon in addition to the hotels then on the land. The event did not occur, the condition was unfulfilled, and the land

in contemplation of the parties at the time of the conveyance was not eliminated from the operation of the deed of trust, and is subject to the lien of the mortgage bonds.

The deed of trust to secure the bonds contains the further provision that "the Glasgow Company shall keep the buildings and property fully insured for the benefit of the trust to the extent of, at least, $40,000; * * * shall preserve the buildings, and permit no waste, with the right, however, to change the buildings or the personal property so that the aggregate value of the improvements or the personalty on this property shall not be diminished." Counsel for the bondholders contend that this provision in the deed of trust is equivalent to a covenant to rebuild; that the building erected to take the place of the burnt hotel is, under the covenant quoted, for the benefit and security of the bondholders, and is therefore not subject to a mechanic's lien for materials furnished and work done in restoring the burnt building. This provision in the deed of trust is not a covenant to rebuild. If the parties intended it as such, they doubtless would have expressed their intention clearly, by saying the Glasgow Company should rebuild, at its own cost, any building destroyed by fire. The language used is that usually employed in covenants to keep in good repair, and it would be a strained construction to extend it beyond that, in order to make it embrace an obligation to rebuild. The bondholders have, by the terms of the trust deed, protection against loss by fire to the amount of $40,000. Insurance against loss by fire is generally taken for the purpose of enabling the owner of the property to rebuild in case of loss. In this case, the money is diverted from its usual course, and goes to a partial satisfaction of the bonds secured as a first lien on the property. The bondholders having received the insurance money which the deed of trust guarantied they should have, to require the Glasgow Company to rebuild would be to place upon it a burden not contemplated by the parties when the deed of trust was executed, and not imposed by the terms of the provision in question, and even deprive it of the aid it might receive in rebuilding from the provisions of the mechanic's lien law.

A very material and important question is presented in this case, arising from the fact that on June 27, 1892, a receiver was appointed in this cause to take charge of all the property of the Glasgow Company, and the usual injunction issued. The receiver was appointed pending the execution of the contract between the Glasgow Company and the Withrow Company for building the hotel, which was entered into on the 15th of May, 1892. This presents for consideration the effect of the appointment of a receiver and granting an injunction on existing executory contracts previously entered into by the insolvent corporation. In this case the Withrow Company continued work under its contract with the Glasgow Company, after the appointment of the receiver, without obtaining the consent of the receiver under the approval and direction of the court. The receiver, without the direction of the court, could not have agreed to carry out the contract.

The doctrine on this question is thus stated in Smith, Rec. p. 102, § 35:

"The power to the receiver to carry out contracts existing at the time of his appointment is not, as a rule, granted by the court, except in cases where there is a lien upon the receivership property of some nature operating as a security for the performance of the contract. The reasons for this rule are apparent: (1) If the receiver could be held to the performance of an uncompleted contract, the performance of the contract by him would be equivalent to a payment or satisfaction of the contract indebtedness, and, in the absence of adequate funds for the purpose, the court will not require him to do so. The functions of the receiver are to marshal the assets and distribute the same to the creditors, as directed by the court, according to their respective rights and interests."

That the receiver in this case, without direction of the court, could take no steps to carry out the contract between the Glasgow Company and the Withrow Company, is a question too well settled to require discussion. The receiver did nothing to make the contract his own, and made no effort to carry it out. The Withrow Company made no application to the court to require the receiver to specifically perform the contract. The doctrine on this subject is thus stated by Brewer, J., in Olyphant v. Steel Co., 28 Fed. 729:

"The court takes possession of the property for the benefit of all concerned, and should so manage it with that purpose in view, making, even if it has the power, no other changes in the several relations of creditors to each other and to the common debtor than are absolutely necessary for the accomplishment of the main purpose. The interests of all parties oftentimes will be promoted by going on with contracts partially completed."

The authorities sustaining this statement of the law are numerous. Southern Exp. Co. v. Western N. C. R. Co., 99 U. S. 191; Oil Co. v. Wilson, 142 U. S. 323, 324, 12 Sup. Ct. 235; Glenny v. Langdon, 98 U. S. 20. See Peoria & P. U. Ry. Co. v. Chicago, P. & S. W. R. Co., 127 U. S. 200, 8 Sup. Ct. 1125.

The receiver having no power to execute the contract of the insolvent Glasgow Company with the Withrow Company without the order and direction of the court, we are led to inquire by what authority the Withrow Company proceeded with the execution of the contract after the appointment of a receiver. On what principle can we say the contractor, the Withrow Company, had a right to proceed with the execution of the contract after the appointment of the receiver? The contract between the Glasgow Company and the Withrow Company created no lien on the property. "This lien is a creation of the statute, and was not recognized at common law." Van Stone v. Manufacturing Co., 142 U. S. 128, 12 Sup. Ct. 181.

The court further says:

"It may be defined to be a claim created by law, for the purpose of insuring a priority of payment of the price and value of work performed and materials furnished in erecting or repairing a building or other structure, and as such it attaches to the land as well as the buildings erected thereon. Now, it is not the contract for erecting or repairing the building which creates the lien, but it is the use of the materials furnished and the work and labor expended by the contractor, whereby the building becomes a part of the freehold, that gives the material man and laborer his lien under the statute. The lien is brought into operation by virtue of the statute, and the contract for building is entered into presumably in view of, or with reference to, the statute."

As the contract gave no lien on the building contracted for, and as the lien can only be acquired by reason of the materials furnished and work and labor done, there must be some point in the progress of the work where, in a case like this, there is a limitation on the time within which the materials must be furnished and work done, and on the amount for which a lien can be asserted. That limitation must be fixed as of the 27th of June, 1892, the date of the appointment of the receiver and entering the injunction order. After that time the contractor had no right, without the order of the court, to go on in the execution of the contract, and perhaps burden with a heavy lien the property which the court had taken in custody and placed in the hands of its receiver for the purpose of securing equity among the creditors of the insolvent corporation. If it had wished to continue the work, it might have applied to the court for an order allowing it to complete the contract, and, if the court could have seen that it was for the benefit of the estate in its custody, it would have made such an order. The argument that the Withrow Company had no notice of the appointment of a receiver, and it is therefore not bound by the order appointing a receiver and granting an injunction, is without merit. The appointment of a receiver of the property of an insolvent corporation is legal notice to all persons having contractual relations with it. Their rights are not affected by notice or the want of it, but by the operation of the law which the court has put in motion.

Able oral arguments have been made, and elaborate and well-considered briefs filed, on the exception to the master's report, which raises the question as to the sufficiency of the account filed by the Withrow Company, in the clerk's office of the county court of Rockbridge county, as the basis of the mechanic's lien claimed.

The statute (section 2476, Code Va. 1887) provides:

"A general contractor, in order to perfect the lien given him by the preceding section, shall at any time after the work done or materials furnished by him, and before the expiration of thirty days from the time such building or structure is completed, or the work thereon otherwise terminated, file in the clerk's office of the county or corporation court, of such county or corporation, in which the building or structure or any part thereof is * * *, an account showing the amount and character of the work done or materials furnished, the prices charged therefor, the payments made if any, and the balance due, verified by the oath of the claimant or his agent, with a statement attached declaring his intention to claim the benefit of said lien, and giving a brief description of the property on which he claims the lien."

Following is the account filed by the Withrow Company:

Millboro Depot, Va., August 25, 1892.

Glasgow Investment Company, to the A. F. Withrow Lumber Co., Contractors and Wholesale Lumber Dealers.

Terms: ———.

From May 15th, 1892, to date.

To labor performed and materials furnished in the construction of a new hotel building at Natural Bridge, Va., and labor performed and materials furnished in repairing and improving the building known as "Appledore Hotel," as per contract ................................... $12,000 00

It is contended for the Withrow Company that the objection to the sufficiency of the account filed is covered by the case of Taylor v. Netherwood, 91 Va. 88, 20 S. E. 888. In that case the account filed was as follows:

1891.
May 22. To stonework done on Mr. Wirt E. Taylor's residence, on Grace street, between Shafer and Harrison streets, in the city of Richmond, and materials furnished, as per agreement with John F. Bell, general contractor for said work ............................................. $2,350 00
Extras: 26 ft. 7 in. curbing, at 90 cts.............................. 23 92
21½ ft. tile, at $1.00...................................... 21 50
                                                                                  _____
                                                                                  $2,395 42
Credit by cash................................................. 1,175 00
                                                                                  _____
   Balance due ............................................. $1,220 42

Of this account the court said: "Where the work is contracted for as an entirety for a specific amount, and this is so set out in the account filed, all the information is given that is needed or can be reasonably required." Applying the doctrine thus stated to the account filed by the Withrow Company, the court cannot see how it sustains that account. The building of the hotel was contracted for as an entirety, and the specific amount to be paid therefor was $17,945.42. The account filed is for $12,000, which cannot, in any sense, be claimed as the specific amount agreed to be paid for building the hotel, or for work to be done thereon. It claims this amount ($12,000) due as per contract. As no such contract was made, and as the account filed does not show the amount and character of the work done or materials furnished, the prices charged therefor, the payments made, if any, and the balance due, it does not conform to the requirements of the statute. Further, as the court has stated, the contract terminated, by the appointment of a receiver, the 27th day of June, 1892. The account to secure a mechanic's lien was not filed within 30 days from that date.

In Gilman v. Ryan, 95 Va. 494, 28 S. E. 875, the court, after stating that the Code requires a general contractor, in order to obtain a lien for work done and materials furnished, to file, within the time prescribed, in the clerk's office designated, "an account showing the *amount and character of the work done or materials furnished, the prices charged therefor, the payments made, if any, and the balance due,*" italicizing the quotations, says:

"The filing of the account is the initial, and one of the most important, steps in the establishment of a mechanic's lien. A substantial compliance with this provision of the statute has always been regarded as essential to the creation of the lien, and as necessary for the protection of owners, purchasers, and other lien creditors."

Any account filed under the statute to secure a mechanic's lien could scarcely impart less information to an examiner of the record than that filed in this cause, as to the amount and character of work done or materials furnished, the prices charged therefor, the payments made, if any, and the balance due.

Analogous to the mechanic's lien law in Virginia is the labor lien law (sections 2485, 2486), in the same chapter as the mechanic's lien

law.    The question as to the sufficiency of the memorandum entered in the clerk's office of the amount and consideration of the labor claim was passed upon by the circuit court of appeals of this circuit in Liberty Perpetual Building & Loan Co. v. M. A. Furbush & Son Mach. Co., 26 C. C. A. 38, 80 Fed. 631.    The court held, Goff, J., delivering the opinion, that the memorandum of the claim filed in that case was insufficient, in not complying with the requirements of the statute, and, as to the duty of the party seeking to establish such lien, the court says:

"A party desiring to comply with the requirements of the sections of the Virginia Code that we have been considering can easily do it, as the information called for is peculiarly within the knowledge of him who is seeking thereby to create a lien on the property of another, and, if he fails to do so, it is likely for the reason that the full statement of the facts would injure his claim, or because of either ignorance or inadvertence, neither of which will be received as an excuse, especially in cases where the rights of others are affected. The suggestion that the record, as it was made in the clerk's office, was sufficient to put any one who examined it on his guard, and that it was such notice as would induce a prudent business man to make full inquiry, is, we think, without force. No one is required to go outside of the clerk's office for the information he is told by the law he can find therein, nor expected to control his conduct by the conflicting statements made by the parties to the record; the one asserting, and the other denying, as their respective interests may suggest. The only question in such cases is, has the party claiming the lien observed the commands of the law and been obedient to its requirements?"

It is unnecessary to cite further authorities to show the insufficiency of the account filed by the Withrow Company on which to base a mechanic's lien.    This disposes of all the material questions raised by the exceptions.    A decree will be prepared in accordance with the views of the court.