Robertson, J.
The track where the hose of the fire department received, the injury,, which temporarily prevented the use of water to extinguish the flames in the plaintiff’s build-dings, was the ordinary railroad track of the defendants. The train which injured the.hose arrived at the usual time at which it habitually arrived at such locality; it came down with its ordinary speed; no means were provided beforehand to notify the defendants that their track was occupied in ■ an unusual manner. There is no evidence that such hose .could be seen by the defendants’ employees on such train, more than sixty feet in front of the engine, and the engineer testified he. did not see it. Ho data were furnished, on the trial, rendering it imperative on such employees to know, that such hose, was on the track, even if they knew the exact location of the fire, which was several hundred feet from such track, and they were not bound to infer the existence of the hose from the existence of the fire. The shouting of a fireman within several blocks of the fire, of the danger to the hose, could not have been heard amid the noise. The engineer reversed the engine as soon as he was notified of something wrong, which was within a few blocks of the hose, and all the brakes were immediately applied. The speed of the train had been diminished to that of four or five miles an hour, and it was in process of being stopped altogether when it cut the hose.
Ho effort was made to prevent the consequences of negligence on the part of the defendants, by removing the hose out of the way of the engine, or preventing its being cut by drawing it off into the ditch adjoining the track, by uncoupling the lengths or otherwise, or raising it so as to avoid going under the wheels. (Chase v. N. Y. Central R. R. Co., 24 Barb. 273.) The only effort made was to stop the engine by shouting. The defendants’, train was furnished with the ordinary means of stopping it; which were promptly used. Patent brakes (Creamer’s) not then fully tested, were not used. Without notice to the defendants’ employees of the presence of the hose on that occasion, in sufficient time to have stopped the engine going at its ordinary speed before reaching it, they were not respon *593 gible for the result. The mere existence of a fire within five or six hundred feet of their track, if its locality could be determined with certainty ten blocks off, was not notice to stop the train; The gradual slackening of speed on . this occasion seems to have been more intended to comply with' the shouting and prevent injury to the crowd, or avoid some unknown danger, than to protect the hose. How a hose carriage with a red lantern suspended behind becomes a signal of danger is not explained. The mere desultory orders of firemen or others to stop a train, did not call upon the engineer to do so, without notice of some danger ; and none was notified; If a rail-j road company were bound to stop its trains every time any| one ordered them to do so, without giving any reason, or every/ time there was a fire near its track, its business;, would be\ seriously interrupted.
Knowing -the time of the arrival of the train, there was time enough after the arrival of the fire engines,, to have placed sentinels far enough up the line of the road to notify the train of the difficulty in time to stop it. ■
Besides , this, the act of the ’defendants was not the immediate cause of the injury to the plaintiffs; it was only immediately the cause by destroying the instruments used to prevent injury. It is true, they were then actually in use, but the same principle must govern if they were just being prepared to be used or on their way, or even kept in readiness for use. If the hose cart was on its way to the fire and interrupted by illegal obstructions in the street, or injured. by a locomotive, the plaintiffs might have lost’the benefit of it; or if any one negligently lost the key of its house, so/ that it could not be got out in time, or if any one having contracted to repair the hose within a certain time, failed to do it; in all these cases the negligence of the delinquent party might more or less contribute to the result of destroying the plaintiffs’ property, yet as a result of the negligence, the consequences would be too remote to make him liable' for damages. Where there is neither willful mischief, contract or fraud, (Clark v. Brown, 18 Wend. 223, 229 ; Anthony v. Slaid, 11 Metc. 290; Acad *594 emy of Music v. Hackett, 2 Hilt. 217;) and even in case of a contract, if there was no fraud, (Blanchard v. Ely, 21 Wend. 342,) only the immediate consequences are to he compensated for. Besides, the determination of the amount lost hy the defendants’ negligence, would he very vague and speculative. (Butler v. Kent, 19 John. 223.) A witness on this trial testified that many of the articles might have been saved if they had been carried away.
None of the exceptions to evidence were well taken. The exceptions must be overruled, the motion for a new trial denied with costs, and the defendants allowed to enter judgment.
Barbour, J. concurred in this opinion.