GOFF, Circuit Judge.
In disposing of the questions raised by this appeal, it will not be necessary to refer to all the facts disclosed by the record. The bill was filed by the M. A. Furbush & Son Machine Company, a corporation created by the laws of the state of Hew Jersey, and a citizen of that state, and Charles A. Furbush, a citizen of the state of Pennsylvania, against the Liberty Woolen Mills and the Liberty Woolen Manufacturing Company, corporations created by the laws of the state of Virginia, and certain trustees under a mortgage made by said Liberty Woolen Mills Company,—all citizens of the state of Virginia. The bill alleges: That the Liberty Woolen Mills in June, 1884, being indebted to M. A. Furbush & Son in the sum of $14,813.77, in order to secure the same, *632 executed a mortgage upon its machinery and fixtures, situated in the mill building of that company, at Liberty, Va., which mortgage was duly admitted to record in the proper office on the 25th day of June, 1884. That on April 11, 1889, all the property of said Liberty Woolen Mills, real and personal, was sold by said company, for the sum of $17,000, to William H. McGhee, T. D. Berry, S. M. Bolling, S. Griffin, and J. S. Campbell, who purchased with notice ■of said mortgage made to secure the debt to the M. A. Furbush & Son Machine Company. That on April 12, 1889, an agreement was entered into between said purchasers and the Furbush & Son Company as follows: That $5,600 of the coupon bonds of the Liberty Woolen Mills (secured by mortgage upon all the real and personal property of that company, dated June 1,1885, duly of record), which had been theretofore pledged by said company as security for a debt due by it to the People’s National Bank of Lynchburg, Va., should bg redeemed by said purchasers within 30 days, and turned over to the Furbush & Son Company as a cash credit on the debt so secured to them by mortgage, which was done; that the purchasers should execute to the Liberty Woolen Mills four bonds, for an amount, in the aggregate, of the residue of the debt due said Fur-bush & Son Company, which were to be assigned to that company as collateral and additional security for the debt so due it, which also was done. It was further set forth that at the time the bill was filed the balance due the Furbush & Son Company on their said debt was $3,597.66, with interest thereon, as well as the $5,600 of coupon bonds before mentioned; that the purchasers of the property of the Liberty Woolen Mills formed a joint-stock company for the purpose of operating the plant so purchased by them, and that it was duly chartered under the law as the Liberty Woolen Manufacturing Company, the old company, with the assent of the purchasers, conveying the property directly to the new organization; that the Liberty Woolen Mills defaulted in the payment of the coupons due December, 1834, on the bonds secured by the mortgage of June 1, 1885, and was still in default when this suit was filed; that the Liberty Woolen Mills Company was insolvent, and that its property would not sell for enough to pay the costs of sale, and the debts secured by the mortgages referred to. The prayer was for the foreclosure of the mortgages, and the application of the proceeds of sale to the payment of the debts of said company; for an accounting; for the appointment of a receiver, if found necessary; and for general relief. Some of the defendants filed separate demurrers to the bill, for reasons not necessary to be now set forth, which were overruled; and thereupon they filed their answers, to which the complainants replied generally, and the cause came on to be heard, the bill having been taken for confessed as to the Liberty Woolen Mills and the Liberty Woolen Manufacturing Company. A decree was passed referring the cause to a master, with instructions to report an account of all the liens upon the property in the bill mentioned, giving their respective amounts, and their order as to priority. The complainants then filed an amended bill, simply making additional defendants, the Liberty Perpetual Build *633 ing & Loan Company being one of them. Said last-named company in its answer claimed that, as assignee, it held liens on the property in the bill described, for labor furnished the Liberty Woolen Manufacturing Company, amounting to $3,180.51, which it insisted were first liens on said property, having preference over the mortgages in the bill set forth. The master to whom the cause was referred, after due notice to the parties, proceeded to execute the order of reference, and returned his report, to which certain exceptions were filed,—among others, that of the Liberty Perpetual Building & Loan Company, because the master had failed to state its debt as a lien on the property sought to be sold, having preference over the liens of the mortgages. Said company, as assignee of the laborers to whom they were originally given by the Liberty Woolen Manufacturing Company, owned “labor tickets” amounting to the sum of $3,180.51, which, it claimed, held the position of a paramount lien on the property described in the bill, by virtue of the laws of the state of Virginia. It appears from the master’s report, and the evidence filed therewith, that these claims were in the form of notes given by the Liberty Woolen Manufacturing Company, dated at various times in the year 1894, payable 60 days after date to the order of the laborers employed by said company, and assigned by them, by indorsement thereon, to the Liberty Perpetual Building & Loan Company. Priority for these debts was claimed under sections 2485, 2486, and 2487 of the Code of Virginia, which are here-quoted in full as follows:
“Sec. 2485. Lien of Employees,” etc., “of All Transportation Companies,” etc., “on Franchise and Property of Company. All conductors, brakesmen, engine-drivers, firemen, captains, stewards, pilots, clerks, depot or office agents, storekeepers, mechanics or laborers, and all persons furnishing railroad iron, engines, cars, fuel and all other supplies necessary to the operation of any railway, canal, or other transportation company, or of any mining or manufacturing company, chartered under or by the laws of this state, or doing business within its limits, shall have a prior lien on the franchise, gross earnings, and on all the real and personal property of said company which is used in operating the same, to the extent of the moneys due them by said company for such wages or- supplies; and no mortgage, deed of trust, sale, hypothecation, or conveyance, executed since the twenty-first day of March, eighteen hundred and seven ty-seven, shall defeat or take precedence over said lien; provided, that if any person entitled to a lien, as well under section twenty-four hundred and seventy-five as under this section, shall perfect his lien given by either section, he shall not be entitled to the benefit of the other.
“Sec. 2486. How Perfected; How Enforced. No person shall be entitled to the lien given by the preceding section unless he shall, within six months after his claim has fallen due, filed in the clerk’s office of the court of the county or corporation in which is located the chief office in this state of the company against which the claim is, or in the clerk’s office of the chancery court of the city of Richmond, when such office is in said city, a memorandum of the amount and consideration of his claim, verified by affidavit, which memorandum the said clerk shall forthwith record in the deed book and index the same in the name of the said claimant and also in the name of the company against which the claim is. Any such lien may be enforced in a court of equity.
“See. 2487. Assignee’s Eights. Any assignee of such claim may file the memorandum and make the oath required by the preceding section, and shall have the same rights as his assignor.”
By an act of the general assembly of Virginia, chapter 224, Acts 1891-92, p. 362, § 2486, as quoted, was amended so as to require the *634 memorandum of the amount and consideration of the claim to be hied in the clerk’s office within 90 days after the claim has fallen due.. Par. 9. The court below overruled the exceptions of the Liberty Perpetual Building & Loan Company to the master’s report, and decreed that the claims held by it ay ere not liens having priority over the mortgages mentioned in the bill, but subordinate thereto. This action of that court is the only error assigned in the appeal we are-now considering.
The court below founded its decree on its findings that the Virginia legislation referred to was, so far as it related to liens for wages due the employés of manufacturing companies, unconstitutional and void (citing Fidelity Ins. & Safe-Deposit Co. v. Shenandoah Iron Co., 42 Fed. 372, 376), and that in any event the laborers-of the Liberty Woolen Manufacturing Company could have no lien, except upon the property of that company, which the court held was simply the equity of redemption; in other words, the property of the Liberty Woolen Mills, subject to the mortgages executed by that company upon the same. In the view that we take of this case, it will not be necessary to pass upon these questions, for the-reason that, under the terms of the sections of the Code referred to-,, the claims relied upon by the appellant were not liens -upon the property mentioned, even if said Liberty Woolen Manufacturing-Company had held it free from all incumbrances, and if there had been no doubt as to the constitutionality of the legislation now called in question. The debts secured by the mortgages were incurred, and the liens claimed by the complainants were created, some time before the organization of the Liberty Perpetual Building- & Loan Company, by which the laborers were employed through Avhom, by assignment of their demands for money due them for wages, the appellant claims a lien on the franchise, gross earnings,, and on all the real and personal property of that company. If such a lien exists on said property in favor of the appellant, it is-one unknown to the common law, as well as to the courts of equity, and can be sustained only under the provisions of the Virginia Code before mentioned. Being thus dependent entirely on the statute, and as it, if recognized, deprives liens prior in date of their previously conceded preference, it can only be successfully asserted after the terms and conditions prescribed by the Code have been fully complied with. This legislation, while commendable in character, is far reaching in its results, and those claiming its benefits-will be required to show that they have strictly observed the obligations imposed upon them by its provisions. This is absolutely essential, in order to properly protect, not only those who are honestly entitled to the benefits secured by the statute, but also for the-protection of the owners of property, and the security of purchasers thereof, as well as for the preservation of the liens created by other-provisions of law, in which the general public, as well as the owners thereof, are concerned. The sum claimed by the appellant (in the-aggregate, $3,180.51) is made up of many small amounts, shown by the “labor tickets” given for labor performed by different persons-for said company, duly assigned, all of which are similar in charac *635 ter, differing only in the dates, names of the parties to whom payable, and the amounts due, and one of which, taken at random from the large number filed, reads as follows:
“No. 4093. Bedford City, Va., May 12, L894.
“Sixty days after date, we promise to pay to Bettie Harris or order two 60-100 dollars, for labor, in accordance with tbe laws of the state of Virginia.
“Liberty Woolen Manuf’g Go.,
“$2.60-100. By George L. Ewart, B’kpr.”
“These tickets were assigned to the Liberty Perpetual Building & Loan Company by the parties to whom they were issued, and that company at different times, and within 90 days after the dates of said tickets, presented them to the clerk of the county court of Bed-ford county, Va., and they were admitted to record. With each set of tickets so presented was a memorandum of the amount and date of each one, to which was attached the affidavit of the cashier of said company that the notes listed had been issued by the Liberty Woolen Manufacturing Company for services rendered it by its laborers; that they were unpaid, and had been assigned to, and were then held by, his said company,—which memorandum was ad-, mitted to record with the notes or tickets. When the appellant presented its claims to the master, objection was made by the complainants to the allowance of the sum due on said labor tickets, because the provisions of the law under which the lien was claimed had not been complied with, and that, therefore, they did not constitute a lien on the property in controversy. The master, though he disallowed the priority of these claims for other reasons, was not impressed with this objection, nor did the court below pass upon it, but disposed of the questions raised on other grounds. Still, before the decree appealed from can be reversed, the appellant must show, not only that the court below was in error in its rulings and its decree, but also that the labor claims in question are liens on said property,—in other words, that the requirements of the Code cited had been strictly observed. Do the records of the office of the clerk of the county court of Bedford county show that a lien has attached to the property in the bill mentioned, by the action of the appellant under the provisions of the law applicable thereto? It will be remembered that it is only the laborers of “any railway, canal, or other transportation company, or of any mining or manufacturing company,” who are entitled to “have a prior lien on the franchise, gross earnings, and on all the real and personal property,” of such companies, “which is used in operating the same, to the extent of the moneys due them by said company for such wages”; and also must it be kept in mind that such laborers are not entitled to such lien unless they have, within 90 days after their claims have fallen due, filed in the clerk’s office of the court of the county or corporation in which is located the chief office in the state of Virginia of the company against which the claim is, a memorandum of the amount and consideration of their claims, verified by affidavit, which memorandum is to be recorded in the deed book, and indexed in the name of the claimant and also in the name of such company. The legislature evidently intended that all these *636 provisions should be respected by those desiring to avail themselves of the benefits provided for in the legislation now under consideration. The intention was that the mere inspection of a record, to be found at a particular place, should disclose all the information necessary in order to enable those interested therein to determine as to the existence of liens on the property of certain companies. If the claims of such laborers are assigned, the assignee, in order to perfect the lien, must observe the provisions of the statute in the same manner and to the same extent as was required of the assignor. It nowhere appears in the memorandum in said clerk’s office, filed for record by the appellant as assignee, that the respective assignors had been employed as laborers by the Liberty Woolen Manufacturing Company, nor is it shown therefrom that said company was of the character that its laborers were entitled to secure their wages by lien; and the insistence that it is presumed to be a manufacturing company, from its name, is without force. Nor is the real and personal property on which a lien was claimed to exist even referred to, let alone designated; and this in the facfe of the statute, which is evidently intended to permit such companies to own both real and personal property, to which the lien provided for shall not attach. Nor does it appear that the memorandum mentioned was filed with the clerk within 90 days after the claims for labor fell due. And, from all that we can see from such record, there is nothing to show when the labor was performed; and it may be, or not, that the claims for the same had been due more than 90 days when the tickets which are the items of the aggregate of appellant’s demand were given to the laborers who assigned them It may be that the memorandum required to be filed with the clerk for record need not necessarily contain all the information that we have just indicated was omitted from the statement filed by the appellant relative to the claims assigned to it, but we think it would be “the better practice so to do,” as has been indicated in the opinions of the courts of last resort in several states, construing statutes similar in character. But we are clearly of the opinion that, because the said record fails to show that the memorandum of the amount and consideration of the claims was filed with the clerk within 90 days after the wages of the laborers were due, no lien attached to the property of said Liberty Woolen Manufacturing Company by the recordation of said memorandum, and that the court below did not err in decreeing against the appellant concerning the same. We do not mean to be understood as saying that the Liberty Woolen Manufacturing Company gave said tickets to its laborers in payment for labor rendered some time theretofore, but we do say that it is not disclosed by said record when the labor represented by such tickets had been performed,—whether the wages were due on the days the tickets were dated, or a week or a year previous thereto. The appellant, realizing that the record was defective, attempted to supply the omitted information by examining a number of witnesses before the master for the purpose of showing that, as a matter of fact, the 90 days allowed by the statute from the time the claim became due to the period when the mem *637 orandum was filed with the clerk had not expired. But that fact cannot be shown by parol evidence after suit has been brought, but it must appear from the record, so that all who examine and read it can see, not only what is claimed, but also that the law has been complied with. The statute does not contemplate that the company may give its note, due 60 days or 1 or 2 years after date, for the amount due its laborer, and that then, when such note is due, 90 days shall be allowed thereafter in which to file a memorandum claiming a lien for said amount; but it means that such a claim for a lien shall be made within 90 days from the time the labor was performed,—from the day the laborer was entitled to demand his wages. The legislature, for reasons plainly evident, has wisely limited the time within which such liens can be perfected, and has-required that the record shall show that the party claiming has asserted them within 90 days from the time that his demand was-due. The appellant is unable, from the record, to do this, and it must suffer the consequences. The statute extended to it certain privileges, and granted to it a security that many others were not permitted to enjoy; and certainly the appellant will not be allowed to accept the favor that was offered, and then to refuse to respect the terms accompanying it. A party desiring to comply with the' requirements of the sections of the Virginia Code that we have been considering can easily do it, as the information called for is peculiarly within the knowledge of him who is seeking thereby to create-a lien on the property of another; and, if he fails to do so, it is likely for the reason that the full statement of the facts would injure his claim, or because of either ignorance or inadvertence, neither of which will be received as an excuse, especially in cases where the rights of others are affected. The suggestion that the-record, as it was made in the clerk’s office, was sufficient to put any one who examined it on his guard, and that it was such notice as would induce a prudent business man to make full inquiry, is, we think, without force. No one is required to go outside of the clerk’s office for the information he is told by the law he can find therein, nor expected to control his conduct by the conflicting statements made by the parties to the record; the one asserting, and the other denying, as their respective interests may suggest. The only question in such cases is, has the party claiming the lien observed the-commands of the law, and been obedient to its requirements?
The conclusion we have-reached is in consonance with the reasoning as found in the opinions of a number of the courts of the country, to which, without quoting the language of the judges, we here refer: Boston v. Railroad Co., 76 Va. 182; Shackleford v. Beck, 80 Va. 573; Mayes v. Ruffners, 8 W. Va. 384; Phillips v. Roberts, 26 W. Va. 783; Davis v. Livingston, 29 Cal. 283; Hooper v. Flood, 54 Cal. 218; Noll v. Swineford, 6 Pa. St. 187; Witman v. Walker, 9 Watts & S. 186; Thomas v. Barber, 10 Md. 380; Delaware Railroad Const. Co. v. Davenport & St. P. Ry. Co., 46 Iowa, 406; Valentine v. Rawson, 57 Iowa, 179, 10 N. W. 338; Lyon v. Railroad Co., 127 Mass. 101; Mulloy v. Lawrence, 31 Mo. 583; Cook v. Vreeland, 21 Ill. 430; Vane v. Newcombe, 132 U. S. 220, 10 Sup. Ct. 60; Van. *638 Stone v. Manufacturing Co., 142 U. S. 128, 12 Sup. Ct. 181. See, also, Phil. Mech. Liens, 576.
Holding, as we do, that the appellant did not acquire liens on the property mentioned in the bill by filing the memorandums re' ferred to in the office of the clerk of the county court of Bedford county, it is consequently unnecessary for us to consider other points relied upon by counsel, presented so forcibly at the bar of this court, and passed upon by the court below. The decree appealed from will be affirmed.
BRAWLEY, District Judge.
I am of opinion that the memorandum put upon record in this case was a sufficient compliance with the statutory requirements, and therefore dissent.