# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

OVERHOLT V. OLD DOMINION MANUFACTURING CO.

NOVEMBER 22, 1900.

Absent, Cardwell and Phlegar*, JJ.

1. RECEIVERS—*Settlement of Accounts—Death of Receiver—Personal Representative.*—A court cannot settle the account of its receiver who has died and has no personal representative, nor can this court review such settlement, if made in the absence of such representative. The receiver's estate is not represented in either court.

2. RECEIVERS—*Compensation—Case in Judgment.*—Courts should be diligent to see that property placed in the possession and under the control of their receivers is economically administered, and while special allowances to receivers are proper in some cases and under peculiar circumstances, the case in judgment is not one in which any extra compensation should have been allowed.

3. MINING AND MANUFACTURING COMPANIES—*Liens of Laborers and Mechanics—How Perfected.*—In order to perfect the lien given to laborers and mechanics for mining and manufacturing companies by section 2485 of the Code, it is necessary that the memorandum required by section 2486 should be filed in the proper clerk's office within ninety days after such supplies are furnished or services rendered; but it is not necessary that this fact should appear from the memorandum, or from any paper filed therewith. It may be shown by evidence *aliunde.*

Appeal from a decree of the Circuit Court of Rockingham county.

*Reversed.*

The opinion states the case.

---

*This case was argued and submitted before Judge Phlegar qualified.

*Turk & Holt* and *A. C. Braxton*, for the appellant.

*Yancey & Haas, Sipe & Harris* and *Conrad & Conrad*, for the appellees.

KEITH, P., delivered the opinion of the court.

Overholt levied an attachment upon the property of the Old Dominion Manufacturing Company to secure a claim against it, amounting to some thousands of dollars. The property so levied upon was taken into possession by the sheriff of Rockingham county. The receivers of the Grottoes Company, claiming to be stockholders and unsecured creditors of the Old Dominion Manufacturing Company, filed their bill in chancery against the Old Dominion Company, alleging its insolvency and praying the appointment of a receiver. The president of the defendant company filed an answer on its behalf, admitting all the allegations of the bill, joining in the prayer for a receiver, and praying also that Overholt be enjoined from any further proceedings with his attachment in equity. Overholt was not a party to the suit, and yet an order was entered in vacation granting the injunction in accordance with the prayer in the answer of the Old Dominion Manufacturing Company, and Rumple, one of the receivers of the Grottoes Company and one of the plaintiffs in its bill, was appointed receiver of the Old Dominion Manufacturing Company. This was done by a decree entered in vacation on the 23d day of November, 1893. Some time between that date and the 4th day of August, 1893, Rumple, the receiver, died, as appears from the decree entered in vacation on the 4th day of August, which recites the fact and appoints John W. Blackburn receiver in his place and stead.

As far as this record shows, no personal representative of Rumple has ever been appointed; none, at least, has been made a party to this suit. The Circuit Court, nevertheless, went on

to settle the accounts of Rumple, and entered a decree, finally passing upon his liability and that of his sureties.

Blackburn took possession of the assets of the Old Dominion Manufacturing Company, which had not been disposed of by his predecessor, and his accounts as receiver are settled.

Pirky Brothers & Shaver filed their bill in the Circuit Court of Rockingham county, claiming to be the assignees of accounts due by the Old Dominion Manufacturing Company to certain laborers and mechanics for services and labor rendered by them, and to secure which liens are claimed by virtue of sections 2485 and 2486 of the Code.

The Circuit Court, by its decrees, passed upon the accounts of Rumple and Blackburn, as receivers, overruling the exceptions filed to the report of the commissioner, who had been directed to settle their accounts as receivers, and held that the liens claimed by Pirky Brothers & Shaver as assignees were valid and binding. From this decree Overholt obtained an appeal and *supersedeas.* ·

It was improper in the Circuit Court to pass upon the accounts of Rumple, receiver, after his death, and in the absence of his personal representative, and we cannot, for a like reason, pass upon the assignments of error with respect to the decree of the Circuit Court in its adjudication of questions arising upon exceptions to the report of the commissioner stating the account of Rumple, receiver. Rumple's estate is unrepresented in this court, as it was in the Circuit Court. Overholt, the appellant, could have had Rumple's estate committed to the sheriff, and then have made the sheriff, administrator, a party to the record, when all questions touching the liability of Rumple and the sureties upon his bond as receiver could have been presented and adjudicated. This he may still do we apprehend, though we decide nothing with respect to the matter, as Rumple's estate is unrepresented.

Coming, then, to the exceptions to the commissioner's report

of the transactions of Blackburn, receiver, we are of opinion that the compensation given the receiver is excessive. The assets of the Old Dominion Company had been in a great measure administered by Rumple during his lifetime. The amount which came into the hands of his successor, Blackburn, was small, his duties few and simple, the discharge of which would have been amply compensated by an allowance of five *per cent.* upon his disbursements, in addition to any actual expenses which he might have incurred. We can discover no sufficient reason for the allowance of a monthly compensation to the receiver, nor does the necessity appear for its continuance during the period sanctioned by the report of the commissioner and the decree of the Circuit Court.

The affairs of corporations and of individuals which come under the control of courts and their receivers are sometimes so large and so complicated as to justify and demand the renting of offices, the employment of clerks, and the retention of counsel, but what would be proper in such exceptional cases would be wasteful and extravagant as applied to the transactions of receivers in ordinary cases, and we think that all courts should be diligent to see that property, placed in the possession and under the control of their receivers, is economically administered. The accounts in this case, we are constrained to say, show a wasteful and extravagant dealing with the assets of the Old Dominion Manufacturing Company, by which the rights of creditors have been greatly impaired. The accounts are not in such condition as would enable us to pass finally upon them, and this branch of the case will therefore be remanded to the Circuit Court to have the administrator of Rumple made a party, and to restate the accounts of Rumple and Blackburn, receivers, in accordance with the principles announced in this opinion.

The assignment of error with respect to the liens of Pirky

Brothers & Shaver presents for our decision a question of much interest.

There are three accounts presented by Pirky Brothers & Shaver, but as all the objections relied upon to defeat the lien appear with respect to the first of them, it will be unnecessary to deal with the other two.

The account filed as the basis of lien No. 1 is as follows:

" Pirky Bros. & Shaver's Lien No. 1.

Old Dominion Manufacturing Company,
          In account with
Pirky Bros. & Shaver, of Shendun, Va.                    Drs.

To amounts due Pirky Bros. & Shaver from Old Dominion Manufacturing Co., on orders, or assignment, from the following named laborers, mechanics, &c., for services and labor rendered by them for said company, which said orders, or assignment, have been accepted by said company.   1893, July 31, S. P. Mace, $15.34."

Then follow a number of entries identical in form, in the names of different assignees, for amounts ranging from one dollar up to fifty-five dollars, aggregating $1,492.12.  To this account Pirky Brothers & Shaver made affidavit before a notary on September 1, 1893, and on the 19th day of the same month they signed the following paper:

" Pirky Bros. & Shaver do hereby declare their purpose and intention to claim, and do hereby claim, a lien on the franchises, gross earnings, and all the real and personal property of the said Old Dominion Manufacturing Co., which is used in operating the same, to the extent of the money due them by said company, as appears from the foregoing account and affidavit, said company being a manufacturing company.  Said lien is claimed

in pursuance of sections 2485 and 2486 of the Code of Virginia, 1887, and as amended by an act of the Legislature of Virginia, approved February 15, 1892."

The account, affidavit, and foregoing declaration were presented to the County Court of Rockingham on September 19, 1893, and were admitted to record.

The defect urged upon us as defeating the lien thus claimed is that it does not appear upon the face of the account, or any of the papers filed therewith, that the supplies were furnished or the services rendered within ninety days after the last item of the account became due and payable. In support of this contention, a decision of the United States Circuit Court of Appeals in the case of *Liberty P. B. & L. Co.* v. *Furbush & Co.*, 26 C. C. A. 38, is relied upon. It is there held, Judges Goff and Simonton concurring, Judge Brawley dissenting, that " the memorandum required to be filed and recorded by section 2486 of the Virginia Code, as amended, in order to give a lien to laborers for transportation companies, and mining and manufacturing companies, must show on its face that the labor was performed within ninety days before the filing of said memorandum, and parol evidence is not admissible to show when the labor was performed."

Section 2486 of the Code is, we think, for the first time before this court for construction upon this point, and, while we entertain great respect for the United States Circuit Court of Appeals, we are unable to concur in its view with respect to this statute. In a note prepared by that learned and accomplished member of the Virginia Bar, the late Mr. Kean, of Lynchburg (3. Va. Law Reg. 95), the decision in *Liberty P. B. & L. Co.* v. *Furbush* is reviewed, and we cannot do better than to adopt what was there said, so far as it deals with the objection which we are considering.

" The argument of the opinion is," says Mr. Kean, " that the

labor tickets, so far as appears from the memorandum filed may
have been for services rendered *more* than ninety days before
the filing of the memorandum, and that this is a fatal omission,
however the fact may be; that the record in the clerk's office,
in and of itself, must show affirmatively all the essential facts
necessary to give a lien as against other lienors; that it is not
sufficient that the memorandum be such as to put anyone on
inquiry—because, says the court,

"'No one is required to go outside of the clerk's office for
information *he is told by the law* he can find therein, nor is
expected to control his conduct by the conflicting statements
made by the parties to the record, the one asserting and the
other denying, as their respective interests may suggest.'"

"This reasoning is unanswerable, if, in point of fact, section
2486, or any other section, *does* require these matters to be
set out in the memorandum, and thus to appear in the clerk's
office. Section 2486, prescribing 'how' such a lien shall be
'perfected,' as amended by the act of February, 1892, is as
follows:

"'No person shall be entitled to tne lien given by the preceding sec-
tion, unless he shall, within ninety days after such supplies are fur-
nished or services rendered, file in the clerk's office of the county, or
corporation, in which is located the chief office in this State of the com-
pany against which the claim is (omitting the provision for the city
of Richmond), a memorandum of the amount, and consideration of his
claim, verified by affidavit, which memorandum the said clerk shall
forthwith record in the deed book,'" etc.

"This provision appears on its face to consist of two parts:

"*First.* A declaration of certain facts which must *exist*
(though they are not required to *appear* in the memorandum)
in order that the claim thereafter specified shall become a lien.

"*Secondly.* A description of the memorandum, which shall be
filed in the clerk's office in order to acquire such lien.

" If the company against which such a claim should be filed, turn out not to be a transportation, mining, or manufacturing company, the proceeding would be nugatory.

" So, though the company might be one of the classes designated, if the memorandum, formally correct in all respects, were recorded in one county when the chief office was located in another, there would be no lien acquired—just as the recording of a deed or the docketing of a judgment in a county in which the grantor or defendant had no real estate would be no notice to anybody, and inoperative. As in regard to the *place* and *character* of the company to be affected, so it would seem to be as respects the *time* when the record must be made to be effectual. It must be within ninety days after the supplies were furnished or the service rendered.

" This, like the other facts just mentioned, would seem to have been purposely left by the act, as a fact, not necessary to be set out in the memorandum, yet which must exist in order to make the lien available.

" The only things the act upon its face requires to appear by the recorded memorandum are, that it shall show:

1. The amount of the claim.

2. The consideration of it—(*i. e.* whether for supplies or for labor.)

3. That it shall be verified by affidavit.

"All else, however essential to the existence of a valid lien, would seem to have been intentionally left by the Legislature to be supplied by proof *aliunde.*

" It is not difficult to conjecture a reason which, whether adequate or not, in point of public policy, may have induced the law-makers to reduce what the memorandum shall contain to its simplest terms. Very often, especially in the case of laborers, the sums due will be small, and the parties unable to understand and act upon a complex law. The amount would often be too inconsiderable to justify the employment of a lawyer to prepare

the memorandum.  If the act means what it appears to say, this could be done by any fairly well-informed lay friend, without charge or for a trifling one."

We are of opinion that the decree of the Circuit Court was right as to these liens, but for errors in the decree in other respects, it must be reversed, and the cause remanded for further proceedings to be had therein.

*Reversed.*