### In re WEST NORFOLK LUMBER CO.

(District Court, E. D. Virginia. January 7, 1902.)

1. FIRE INSURANCE—NATURE OF CONTRACT—CLAIMS OF LIENHOLDERS ON INSURED PROPERTY.

Policies of insurance against fire are mere personal contracts of indemnity, which do not attach to the property insured as an incident, nor take its place when the property is destroyed, so as to entitle any one having a lien on the property to any interest therein; and, being so entirely separate from the property, the proceeds of a policy which has been pledged by the owner of the property to secure a debt exceeding the amount of such proceeds is no part of the debtor's estate, but

belongs to the pledgee, and other creditors can claim no interest therein, either by virtue of liens on the property or otherwise.

2. BANKRUPTCY—PREFERENCES.

Where a creditor of a bankrupt files a petition in the court of bankruptcy, setting up a claim to the ownership of a fund which has been paid into court subject to the rights of conflicting claimants, but does not seek to prove a claim as a general creditor of the estate, the amount of a preference received by such creditor cannot be deducted from such fund, which is awarded to it as owner.

8. SAME—VALIDITY OF LIENS—SUPPLY LIENS UNDER VIRGINIA STATUTE.

Liens for supplies furnished to a manufacturing company, the right to which is given by Code Va. § 2485, which have been perfected as required by the statute, although within four months prior to the adjudication of the debtor as a bankrupt, are not dissolved by such adjudication, but will be recognized and enforced by the court of bankruptcy, being given priority in the order of their recordation, in accordance with the rule established by the decisions of the supreme court of the state.

4. LIENS—SUPPLIES FOR MANUFACTURING COMPANY—VIRGINIA STATUTE.

A corporation whose principal business is the manufacture of rough lumber into dressed and finished lumber for various uses, although incidentally engaged in buying and selling lumber, is a "manufacturing company," within the meaning of Code Va. § 2485, which gives a lien for supplies furnished to such companies necessary for the operation of their business, and lien claimants who furnished lumber to such company for manufacture are not required to prove that it was all so manufactured.

5. SAME.

Code Va. § 2485, as amended by Act Feb. 15, 1892, provides that "all persons furnishing supplies to a mining or manufacturing company, necessary to the operation of the same," shall have a lien for the money due for such supplies. Section 2486, as amended by Act Feb. 12, 1896, provides that "no person shall be entitled to the lien given by the preceding section unless he shall within ninety days after the last item of his bill becomes due and payable" file his claim for record, etc. Held, that the last provision merely fixes the limit of time after which a lien claim cannot be filed, and does not preclude a lien claimant who has given a term of credit for the supplies furnished from filing his claim before such term of credit has expired.

6. SAME—SUFFICIENCY OF LIEN STATEMENT.

A lien claim filed under such statute is not insufficient because it fails to show what part of the debt is actually due and enforceable and what part not due, nor because it does not show on its face that it was filed within 90 days after the last item of supplies was furnished, where such fact is stated in the affidavit by which it is required by the statute to be verified, and which forms a part of the claim.

7. SAME—ASSIGNEE OF DEBT.

Under such statute, a claim for a lien may be filed by an assignee of the debt.

In Bankruptcy. On exceptions to report of referee.

The West Norfolk Lumber Company was on the 21st day of August, 1900, at the instance of its creditors, duly adjudged an involuntary bankrupt, the said company having been engaged since 1894 in the operation of a plant, situated at West Norfolk, Va., for the manufacture of rough lumber into flooring, ceiling, box shooks, and other dressed material. On the night of the 11th of May, 1900, the plant, together with a large portion of the lumber on hand, was consumed by fire. At the time of the fire, and for several years prior thereto, the lumber company was indebted to the Farmers' Bank of the State of Delaware, at Georgetown, in a large amount, for money borrowed by the lumber company, originally for the purpose of repairing its plant, and from time to time for the general conduct of its business. At the time of the fire the indebtedness amounted to $58,434.56,

evidenced by notes of the company discounted at the bank, and by bills receivable assigned or discounted with the bank theretofore. This indebtedness was secured by policies of insurance issued upon the property of the company, which, by agreement between the bank and the company, had been made payable, in case of loss by fire, to the bank, as its interest might appear. The company was also indebted to the Merchants' & Farmers' Bank of the City of Portsmouth in the sum of $5,000, evidenced by a promissory note to the bank, secured by a deed of trust on the land and buildings of the lumber company, duly recorded, and also by two certain policies of insurance on the buildings of said company, aggregating $3,000, made payable to the trustee in the deed securing the bank's debt, as his interest might appear. After the fire, to wit, on the 24th day of May, 1900, the Gray Lumber Company filed in the clerk's office of the county court of Norfolk county a memorandum showing the amount and consideration of the claim held by it against the lumber company, and claimed a prior lien under sections 2485 and 2486 of the Code of Virginia, as amended, on all the property, real and personal, of the said company, other than that forming a part of its plant, to the extent of the money due them for supplies claimed to have been furnished the company, necessary to its operation. Shortly after the filing of this lien, other creditors of the company, claiming liens under the said sections of the Code of Virginia, filed similar memoranda against said lumber company. Subsequent to the filing of these liens, and before the bankrupt proceedings were inaugurated, the insurance companies having policies of insurance on the property of the defendant company paid to the Bank of Delaware the sum of $11,806.56, and to the Portsmouth bank $1,178.34, which amounts the said banks, respectively, applied as credits upon the debts due to them; and since the adjudication of bankruptcy the said insurance companies have paid into court on account of policies of insurance held by the Delaware bank $13,316.49, and on account of the Portsmouth bank $1,179.34,—said last-named amounts having been so paid by agreement between the bankrupt's trustee, the insurance companies, and the banks, respectively, that it was to be without prejudice to the rights of any of the parties in interest.

Ivor A. Page, for petitioning creditors.

Ross & Lambeth, for bankrupt.

Heath & Heath, for Farmers' Bank of Delaware.

R. C. Marshall, for Merchants' & Farmers' Bank of Portsmouth.

White, Tunstall & Thom, J. W. Willcox, Starke & Starke, J. L. McLemore, J. C. Parker, J. Saunders Taylor, and Hughes & Little, for sundry supply lien creditors.

T. S. Purdie, for general creditors.

WADDILL, District Judge (after stating case as above). This case is now before the court upon exceptions taken to the report of the referee, D. Lawrence Groner, Esq., and the questions to be determined are: The ownership of the insurance money aforesaid; whether the supply lien creditors have any claim thereto; the validity of the supply lien creditors' claims against the company; together with the order of priority, as among themselves, and what preferences, if any, have been given by the bankrupt to any of its creditors.

1. The claim of the Bank of Delaware to the fund derived from the policies of insurance on the burned buildings, which were payable to it at the time of the fire, will be considered. This money the bank insists is not a part of the bankrupt's estate, "but belongs to it," and that, as the amount is less than the indebtedness to the bank, the same should be applied, independently of the bankruptcy proceedings, as a credit on its debt; while the supply claimants, on the other

hand, urge that the insurance money constitutes a part of the bankrupt estate, taking the place of the buildings and property burned, and should be applied in satisfaction of their liens under the Virginia statute; that said statute gives them a prior lien superior to any other lien by "mortgage, deed of trust, hypothecation, sale, or conveyance"; that it is necessarily a superior claim to that of a mere pledge or hypothecation of policies of insurance; and cite, in support of their position, Fidelity Ins., Trust & Safe Deposit Co. v. Roanoke Iron Co. (C. C.) 81 Fed. 439.

The statute of Virginia is exceedingly broad, and it may be conceded that liens properly perfected under it take precedence of claims due for money advanced before the supplies are furnished; but the question presented here is as to whom the money actually belongs. If the bankrupt company had no interest in the money other than a mere equitable interest in any surplus that might arise after the payment of the debt for which the insurance policies were pledged, and there was no such surplus, then there would be nothing belonging to the company. There was no estate upon which the supply lien creditors' claims could attach. This arises from the character of the contract, viz., a policy of insurance against loss by fire, which is a mere personal contract of indemnity against a possible loss on account of the interest of an insured in the thing insured. Money derived on policies of insurance taken out by the mortgagor upon property is in no way liable for the payment of a lien or mortgage thereon, except by express agreement between the parties. Such contracts for indemnity do not attach to the property insured, nor go with the same as incident, by any conveyance or assignment, unless there is some special stipulation to that effect between the insurer and the insured. This is the result of the decisions, and it follows that the money received from policies of insurance, being less than the amount for which the pledge was made, held by the Bank of Delaware upon the property and estate of the bankrupt, taken out and assigned to it for its protection, belongs to the bank, and not to the estate of the bankrupt.

The supreme court of the United States has quite recently had under review this subject, and there seems to be no doubt from their decisions as to the correctness of the conclusions herein reached. Wheeler v. Insurance Co., 101 U. S. 439, 25 L. Ed. 1055, was a case of insurance upon certain buildings and improvements upon real estate upon which there was a lien, and on a certain cotton gin and cotton. Policies of insurance had been taken out by one who made advances to the owner of the property, and, a fire occurring, the holders of the notes, previously secured upon the same property, claimed the benefit of the insurance money, and insisted that the insurance was really taken out by the policy holders as the agent of the debtor, and for his benefit, and that the owner of the property having paid the premiums to secure the insurance, and having in the mortgage securing the notes on the property agreed to insure for the benefit of the mortgagees, and to transfer such policies to them, the holders of said notes were equitably entitled to the insurance, and that the persons who effected the insurance had in fact no insurable interest

in the property insured; but the supreme court held that, the mortgage debtor having no insurance policy taken out and transferred to him, as was contemplated by the mortgage, there was no privity of contract between the note holders and the person in whose interest the insurance policies in question were taken out, and that, the policies having been taken out by a creditor, with the assent of the property owner, for his own protection, he was entitled to be paid his debt out of the insurance money.

The City of Norwich, 118 U. S. 468, 6 Sup. Ct. 1150, 30 L. Ed. 134, was a case of marine insurance, arising in a limited liability proceeding in admiralty, and in which the supreme court, in determining the extent of the owner's interest in the ship insured, held that the policy of insurance on the ship lost was no part of the owner's interest in the ship, and did not enter into the amount for which the ship could be held liable. In a word, the supreme court held the shipowner free from liability under the act of congress, and decreed him the money due himself under insurance policy taken to indemnify him against hazard incurred by the ship, leaving persons who had sustained loss by reason of the disaster to the ship unpaid. In this case Mr. Justice Bradley, in the course of a very exhaustive and learned opinion, in discussing the extent of the interest of the shipowner in the property destroyed, at page 494, 118 U. S., page 1157, 6 Sup. Ct., and page 144, 30 L. Ed., said:

"This view is corroborated by reference to a rule of law which we suppose to be perfectly well settled, namely, that the insurance which a person has on property is not an interest in the property itself, but is a collateral contract, personal to the insured, guarantying him against loss of the property by fire or other specified casualty, but not conferring upon him any interest in the property. That interest he has already, by virtue of his ownership. If it were not for a rule of public policy against wagers, requiring insurance to be for indemnity merely, he could just as well take out insurance on another's property as on his own, and it is manifest that this would give him no interest in the property. He would have an interest in the event of its destruction or nondestruction, but no interest in the property. A man's interest in property insured is so distinct from the insurance that unless he has such an interest independent of the insurance his policy will be void. This rule of law manifests itself in various ways. If a mortgagor insures the property mortgaged, the mortgagee has no interest in the insurance. He may stipulate that the policy shall be assigned to him, and the mortgagor may agree to assign it; and, if it be assigned with the insurer's consent, the mortgagee will then have the benefit of it; or, if not assigned according to agreement, the mortgagee may have relief in equity to obtain the benefit of it. So, where property is sold, the insurance does not follow it, but ceases to have any value, unless the insurer consent to the transfer of the policy to the grantee of the property. In other words, the contract of insurance does not attach itself to the thing insured, nor go with it when it is transferred. It is hardly necessary to cite authorities for a rule which has become so elementary. We will only refer to a few of them. Lord Chancellor King in Lynch v. Dalzell, 4 Brown, Parl. Cas. (2d Ed.: London, 1803) 431 (vol. 3, 1st ed., p. 497); Id., 2 Marsh. Ins. 801; Lord Hardwicke in Sadlers Co. v. Badcock, 2 Atk. 554; Carroll v. Insurance Co., 8 Mass. 515; Insurance Co. v. Lawrence, 10 Pet. 507, 512, 9 L. Ed. 512; Carpenter v. Insurance Co., 16 Pet. 495, 503, 10 L. Ed. 1044; Insurance Co. v. Tyler, 16 Wend. 385, 397, 30 Am. Dec. 90; Wilson v. Hill, 3 Metc. 66, 68; Powles v. Innes, 11 Mees. & W. 10, 13; McDonald v. Black's Adm'r, 20 Ohio, 185, 55 Am. Dec. 448; Plimpton v. Insurance Co., 43 Vt. 497, 5 Am. Rep. 297. Carroll v. Insurance Co., Powles v. Innes, and McDonald v. Black's Adm'r

were cases of marine insurance, and the same rule was followed in those cases as in cases of insurance against fire."

In the further progress of this opinion the learned justice, in discussing the question of the stress laid upon the hardship of the shipowner's being entirely indemnified for the loss of his vessel, and persons sustaining damage from the collision by the fault of the owner's employés getting nothing, at page 495, 118 U. S., page 1158, 6 Sup. Ct., and page 144, 30 L. Ed., said:

"This mode of contrasting the condition of the parties is fallacious. If the shipowner is indemnified against loss, it is because he has seen fit to provide himself with insurance. The parties suffering loss from the collision could, if they chose, protect themselves in the same way."

In this case, as the contest is entirely between creditors, the question of hardship, if it could have any effect, would be entitled to little consideration. The supply lien creditors, upon whom the loss falls, in addition to their special and peculiar lien, given them by statute, might have availed themselves of the same protection, by way of insurance, as the bank did. Reference may also be had to Heller v. Bank, 89 Md. 602, 43 Atl. 800, 45 L. R. A. 438, 73 Am. St. Rep. 212; In re Little River Lumber Co. (D. C.) 92 Fed. 585; May, Ins. p. 1040; Bank v. Hume, 128 U. S. 195, 204, 205, 9 Sup. Ct. 41, 32 L. Ed. 370. The latter case is one of life insurance, and is referred to with a view of showing the inability of one, other than the person in whose name the insurance policy is issued, to claim the money thereunder, and the similarity between life insurance policies and fire insurance policies; and the first case of Heller v. Bank; supra, will be found to contain an exceedingly full and able discussion of the subject under consideration.

2. The referee, having reported in favor of the Bank of Delaware as to the insurance money, in accordance with the views herein expressed, further held that the bank was, nevertheless, chargeable on account of dealings had by it after insolvency, and within four months of the bankruptcy, with certain preferences arising from payments made to it, to wit, for the sum of $1,374.68, and that such amount should be charged against it, and deducted from the insurance money to be received. The position of the referee in this respect would be entirely correct in dealing with any money properly a part of the estate of the bankrupt, if the bank sought to prove against the estate any claim on account of its indebtedness; but, as neither of these conditions exists, the action of the referee cannot be sustained. The theory on which the money is decreed to the bank is that it, and not the bankrupt company, is entitled to the money due under the insurance policies by virtue of the assignment of the policies; there being no surplus arising from such policies, after the payment of the bank's debt. The petition filed in these proceedings by the bank, in view of the circumstances under which the money was paid into court, is not the equivalent of the presentation of a claim against the estate of the bankrupt. The money was paid in court with the express understanding that it was to be without prejudice to the rights of any of the parties in interest, and the petition filed was merely to have the court determine to whom the money belonged, in view of

the conflicting claims set up in reference to said insurance money. No claim against the estate of the bankrupt, except as to such insurance money, is asserted, although the bankrupt company will be considerably indebted to the bank, after allowing credit for all insurance and all sums heretofore received.

3. The principles announced in reference to the insurance policies held by the Bank of Delaware apply with equal force to the insurance policies held by the Merchants' & Farmers' Bank of Portsmouth, and the said bank is entitled to the amount of the two insurance policies held by it, one of which has been already paid, and a decree should be entered in its favor for the amount arising from the remaining policies paid into court in these proceedings. The balance due the bank will be subordinated to the payment of the lien claims for supplies hereinafter allowed, the said supplies having been furnished prior to the date of the recordation of the bank's mortgage. The section of the statute (section 2485, Code Va.) in terms provides that the lien of persons furnishing supplies shall be prior to any lien by deed of trust, mortgage, hypothecation, sale, or conveyance, made or executed, and admitted to record, subsequent to the day on which said supplies were furnished. The date of recordation being the time fixed by the statute after which supplies cannot be furnished and a lien secured, it follows in this case that the liens, in so far as they are allowed as above, take precedence of the deed of trust in favor of the bank.

4. This brings us to the consideration of the validity of the supply claims, and how far such liens will be enforced under the present bankruptcy act. The validity of the supply lien act of the state has been judicially passed upon by the supreme court of the state of Virginia, by the United States circuit court of appeals and the circuit court of the United States for this circuit. Virginia Development Co. v. Crozer Iron Co., 90 Va. 127, 17 S. E. 806, 44 Am. St. Rep. 893; Liberty Perpetual Building & Loan Co. v. M. A. Furbush & Son Mach. Co., 26 C. C. A. 38, 80 Fed. 631, 42 U. S. App. 496; Fidelity Ins., Trust & Safe Deposit Co. v. Roanoke Iron Co., 81 Fed. 439. This court, heretofore, in the matter of the Reese Manufacturing Company, in bankruptcy, not reported, recognized the existence of such liens under the present bankrupt act; following in Re Kerby-Dennis Co., 36 C. C. A. 677, 95 Fed. 116, and In re Emslie, 42 C. C. A. 350, 102 Fed. 291. The order of priority of payment of supply lien creditors, as among themselves, was also passed upon in the Reese Manufacturing Company Case, referred to, and held to be that adopted by the supreme court of the state in the case of Virginia Development Co. v. Crozer Iron Co., supra; that is to say, that such liens took precedence as of the date of their recordation in the clerk's office. There seems to be no reason to depart from the conclusions then reached, either as to the recognition of such claims in bankruptcy or their order of priority among themselves.

It is earnestly insisted, however, that the supply claims in this case are not valid, because the bankrupt was not such a manufacturing company as was contemplated by the supply lien statute; that said company was not principally engaged in the manufacture of lumber,

but was engaged as well in buying and selling lumber; and that the supplies for which the liens were filed were furnished indiscriminately as to the two businesses; and that it was not shown that the items charged for were supplies furnished to a manufacturing company, necessary to the operation of the same. Upon the question as to the character of the company, and whether the items charged for were necessary to the operation of the manufacturing business, and were so furnished and used, a great mass of evidence was taken, and the referee, in a carefully prepared report, finds that the bankrupt company was such a manufacturing company as was contemplated by the statute, that its general business, well recognized and understood, was that of the manufacture of rough lumber into flooring, ceiling, box shooks, and other dressed material, and that in so far as it did buy and sell lumber it was an incident in connection with the manufacturing business, and not its regular business, and that the supplies furnished for which liens were allowed were necessary to the conduct of its business, and were sold and furnished to be used in such business, and in the main so used; and the referee further determined that it was not incumbent on the lienor, when goods were necessary for the operation of the business in hand, and were sold and delivered for that purpose, to follow the goods themselves, and show that they were all actually manufactured, there being in fact no dispute but that the great bulk of the purchases were of the character indicated and so used. The referee cited, in support of his conclusion, Jones, Liens, § 1329; Morris Co. Bank v. Rockaway Mfg. Co., 14 N. J. Eq. 189; Singerly v. Doerr, 62 Pa. 9; Richmond & I. Const. Co. v. Richmond, N. I. & B. R. Co., 15 C. C. A. 289, 68 Fed. 105, 34 L. R. A. 625; Burns v. Sewell, 48 Minn. 425, 51 N. W. 224. After careful consideration of the evidence in the case and an examination of authorities cited, I fully concur with the referee as to this manufacturing company being such a one as is contemplated by the act, and that the materials sold, and for which the debts were contracted, as allowed by the referee, were such as for which liens can be claimed, and that the lienors have produced proof sufficient to establish their liens.

5. We come next to the consideration of the question of the time within which supply liens may be filed, whether from the date the supplies are furnished, or only within 90 days after the last item of the account becomes due and payable. This involves the interpretation to be given sections 2485 and 2486 of the Code of Virginia, as amended, under which the liens are claimed. The referee, in an able and carefully considered report, held that the liens could not be filed from the time that the supplies were furnished, where credit was given, but only after the last item of the account became due and payable, and within 90 days from that date. After giving the subject much thought and consideration, I have reached a different conclusion from that arrived at by the referee. Taking into view both sections of the statute,—the one under which the lien is given, as well as the one under which it is secured,—with the various amendments to each section, together with the subject-matter of legislation, which is of a remedial character, and intended to encourage the business of

concerns such as the bankrupt, by affording a basis of credit not generally given, I think that the supply lien can be claimed from the time that the supplies are furnished, provided that the claim be filed not later than 90 days after the last item of the account becomes due and payable.

Section 2485 of the Code, as amended by Act Feb. 15, 1892, provides that:

"All persons furnishing supplies to a mining or manufacturing company, necessary to the operation of the same, shall have a prior lien upon the personal property of such company, other than that forming a part of its plant, to the extent of the money due them for such supplies, and also a lien upon all of the estate, real and personal, of said company; which said last lien, however, upon such real and personal estate, shall be subject and inferior to any lien by deed of trust, mortgage, hypothecation, sale or conveyance, made or executed and duly admitted to record prior to the date upon which said supplies are furnished." Acts 1891–92, p. 362.

And section 2486, as amended by Act Feb. 12, 1896, this being the section providing for the "perfection and enforcement" of the lien given by the preceding section, provides that:

"No person shall be entitled to the lien given by the preceding section unless he shall, within ninety days after the last item of his bill becomes due and payable, for which said supplies are furnished or services rendered, file in the clerk's office," etc., "a memorandum of the amount and consideration of his claim, verified by affidavit, which memorandum shall be" recorded, indexed, etc. Acts 1895–96, p. 340.

The language of the first section of this act is broad and comprehensive, and plainly contemplates the existence of the lien from the time the supplies are furnished. It gives a prior lien upon the personal property of such company other than that forming a part of its plant, and also a lien upon the estate, real and personal, of such company, subordinating such latter lien, however, only to liens duly admitted to record prior to the date at which the supplies are furnished; in a word, against liens acquired by deeds of trust, mortgage, hypothecation, or in case of a sale or conveyance. The time of furnishing the supplies is the period as of which the material man is given a right of lien.

The right to claim the lien arises under this section, and may be enforced at any time after the supplies are furnished, but may be lost by failure to comply with some provisions of the act giving the right. The only requirement is that the lien shall be filed "within ninety days after the last item of the bill becomes due and payable." If the claim is filed within that time, the lien secured relates back to the time the supplies were furnished, subject to be defeated by prior or intervening supply liens. There is nothing incongruous or unusual in having security for a debt which, although due and owing, is yet not payable. It is just what is done in nearly every trust deed or mortgage, and the legislature can as well provide for such character of lien as can parties contract for the same among themselves. The word "due" in this section should be construed as meaning "owing," rather than "payable." This interpretation has frequently been given to this word in similar statutes, such as mechanics' liens and attachment statutes. Williamson v. Bowie,

6 Munf. 176; Bank of U. S. v. Merchants' Bank of Baltimore (Va.) 1 Rob. 585; Smalley v. Stone Co. (Mich.) 72 N. W. 30. In U. S. v. State Bank of North Carolina, 6 Pet. 29, 8 L. Ed. 308, the language of the act of congress under consideration was: "Where any person becoming indebted to the United States by bond or otherwise shall become insolvent, the debt due the United States shall be first paid." The court held the word "due" to mean "owing," and not "payable."

The language of section 2486, amended, "within ninety days after the last item of his bill becomes due and payable," is not used to designate the beginning and the end of the period in which the memorandum may be filed, but to prescribe the time within which such lien must be filed; or, to state it differently, to fix a period not later than and beyond which it cannot be filed. The construction of the word "within," used in statutes, has frequently been had. In Levert v. Read, 54 Ala. 531; Merchants' & Traders' Nat. Bank v. Mayor, etc., of City of New York, 97 N. Y. 355; Dawson v. Black (Ill.) 36 N. E. 413; Railway Co. v. Eubanks, 32 Mo. App. 189; Atherton v. Corliss, 101 Mass. 40; Young v. The Orpheus, 119 Mass. 179,—the interpretation herein placed is given.

No case in Virginia seems to have been decided under this particular section of the supply lien law, as amended, and we are therefore left without specific interpretation of the meaning of the act by the highest court of the state. Much light, however, is thrown upon the subject by the decisions of that court, of comparative recent date, under the clause of the mechanic's lien law giving material men and subcontractors a lien.

In Railroad Co. v. Miller, 80 Va. 821, President Lewis, construing section 5 of the act approved March 31, 1875, which was as follows:

"Any sub-contractor, or any person contracting to furnish materials about a building or other improvement, for a general contractor, or other person than the owner, may give notice in writing to the owner of such building or other improvement, stating the value of the labor performed or materials furnished, and shall, within twenty days after such building or other improvement is completed, or the work thereon otherwise terminated, furnish the owner thereof with an affidavit, showing a correct account of the amount due the said party by the contractor and remaining unpaid to the subcontractor, or person contracting to furnish materials, and the said owner shall be liable, in," etc. Acts 1874–75, p. 437.

—After remarking that the principal question sought to be raised by the instruction was that the notice and affidavit required by the statute to entitle the subcontractor to the benefit of its lien must, in order to have that effect, be furnished after, and not before, the entire completion of the work by the general contractor, said:

"Obviously, this is not the true construction of the statute. * * * It is plain from the language thus employed that the intention of the legislature was to authorize notice to be given after the materials have been furnished by the subcontractor, and to prescribe a limit within which the essential affidavit, 'showing a correct account of the amount due' to the subcontractor, shall be furnished, namely, twenty days after the completion of the work, and no longer. In other words, the subcontractor may give notice as soon as the materials are furnished, and may at the same time, if he pleases, furnish the required affidavit, or at any time thereafter, provided the same is furnished within twenty days after the work is completed."

: In Railroad Co. v. Howison, 81 Va. 125, construing the same section, Judge Lacy said:

"The subcontractor was not obliged to wait until the work was finished or terminated otherwise before he gave his notice. He was entitled, under the amended law, to serve his notice at any time after the labor was performed and the materials furnished, before the expiration of twenty days from the completion of the building or other improvement, or the day the work was otherwise terminated."

Another view of this statute strongly convinces me of the correctness of the views herein expressed. If the supply lien can only be secured after the last item in the bill becomes due and payable, and within 90 days from that time, the result will be that no credit can be given by a vendor in the sale of his goods. The moment credit is given, a subsequent vendor, less considerate of his vendee's interests and wishes, will sell his goods either for cash or on a shorter credit, and file his lien and secure the same, to the exclusion of the earlier and more lenient creditor, who would be powerless to avail himself of a security that the law gave him, and that he had only lost by reason of his generosity to his debtor. Sales on credit could no longer be had to mining and manufacturing companies. They would in their dealing be reduced to a strictly cash basis, and the statute designed to secure them enlarged and additional means of credit, and thereby to foster their interests, would prove a disadvantage rather than a benefit to them. I am informed that Judge Prentis, of the circuit court of the county in which the bankrupt corporation did business, has recently, in an unreported case, taken the same view of this act. To his opinion great weight should be given, as well because of his eminent capacity to reach a correct conclusion, as because it is the construction given by the local state court.

6. An exception made to the report presents the further question of the sufficiency of the supply lien claim of the Branning Manufacturing Company, one of the bankrupt's creditors; the contention being that said claim was invalid, because the memorandum of account filed with the lien failed to show what part of the debt was actually due at the time of filing, and what part not due; the total claim being for $6,836.27, $3,415.17 of which amount had actually fallen due. The referee was of opinion that the claim as filed was sufficient, but that only the sum actually due could be allowed thereon. Under the view taken by the court, as hereinbefore expressed, as to the time within which accounts may be filed, this exception becomes less material, as the date of the sale of the supplies is the time from which the claim can be filed, and not that at which the last item of the account falls due. The account, as filed, is sufficient, under the court's view of the law, though the better practice would have been to have filed an account in detail, in order that the record would show the amount for which the lien was claimed, as well as the portion for which it, at any given time, was enforceable. A court of equity in the enforcement of the claim would, I take it, have no difficulty in providing only for the collection at the particular time of the amounts actually due. Iaege v. Bossieux, 15 Grat. 83, 76 Am. Dec. 189.

The lien is further excepted to because it failed to show upon its face the fact that the same was filed within 90 days after the last item of the bill for supplies furnished became due and payable, and that it was therefore invalid, under the decision of Liberty Perpetual Building & Loan Co. v. M. A. Furbush & Son Mach. Co. (of this circuit) 26 C. C. A. 38, 80 Fed. 631, 42 U. S. App. 496. This position is likewise untenable. It sufficiently shows that the claim was filed within the time prescribed by the statute. The affidavit required to be filed with the memorandum of account which forms a part thereof in terms says: "And that ninety days have not elapsed since the last item of said bill for said supplies became due and payable." This is a sufficient declaration as to the claim having been filed within the statutory period, and the affidavit can be referred to for the purpose of giving the information required by the statute. Reference may also be had to the case of Overholt v. Manufacturing Co. (Va.) 37 S. E. 307, as bearing upon this exception.

7. Another exception presents for the consideration of the court the question of whether the claim of one Parsons, the assignee of sundry small orders issued by the bankrupt company, for the payment of its hands, should be allowed, and, granting that the assignee can make such claim, whether the fact he is unable to state just from whom he received these assignments, when they were issued, or positively at what time the labor was performed for which they were issued, should disentitle him to recover. The first question is one of law, and under the ruling of Liberty Perpetual Building & Loan Co. v. M. A. Furbush & Son Mach. Co., 26 C. C. A. 38, 80 Fed. 631, 42 U. S. App. 496, the assignee of claims under the supply lien law can ordinarily file the lien.

The other questions presented are largely dependent upon the facts, and, as the point is made that the evidence as to this claim is not returned by the referee, the claimant should have an opportunity to again submit his proof of lien to the referee, and have him pass thereon.

The report of the referee will be recommitted, with directions to state an account of the fund under the control of the court, according to the views herein expressed.